407 S.E.2d 873 (1991)
103 N.C. App. 720
In the Matter of J.A., Respondent-Appellant.
No. 9014DC596.
Court of Appeals of North Carolina.
August 20, 1991.
*874 Atty. Gen. Lacy H. Thornburg by Asst. Atty. Gen. Jane Rankin Thompson, Winston-Salem, for the State.
Ann F. Loflin, Loflin & Loflin, Durham, for respondent-appellant.
WYNN, Judge.
Respondent appeals from an order adjudicating him delinquent and placing him on probation for one year following convictions of first degree sexual offense and assault by pointing a gun. For the reasons that follow, we find no error.

I
On 27 July 1989, Mrs. L and her husband, Mr. L (hereinafter referred to jointly as "the L's"), attended a concert leaving their four year-old daughter, CL, and Mrs. L's seven year-old step-brother, KS, in the care of a thirteen year-old neighborhood boy, JA (the parties' names were omitted from the record). Testimony at trial by the State's witnesses tended to show that during the evening, while playing a game of strip checkers, JA took off some of his clothes; he watched obscene movies with the children and they looked at magazines in which there were pictures of nude people; he touched CL's rectal area and he put something on her vagina which felt like water; he obtained a gun and pointed it at CL.
Upon returning from the concert, CL's parents noticed that their bedroom was messy. They also noticed that CL behaved strangely and exhibited explicit sexual behaviors. Shortly thereafter, CL informed Mrs. L that JA had touched her and that she along with JA and KS had watched a movie of people having sex.
The L's contacted Dr. St. Claire, who examined CL the morning after the alleged incident. She found that CL had a moderately red vaginal area with a moderate amount of cloudy discharge; the perianal and anal areas were red and irritated with a mucoid discharge that was not normally present.
Additional evidence for the state included testimony from Donna Mansour-Norris, a *875 social worker with the Duke Child Protection Team and an expert in pediatric social work; S.M. Barringer, a youth investigator with the Durham Police Department; and, Carolyn Cole, Director of the Trauma Treatment Service at the Community Guidance Clinic, specializing in child sexual abuse. Their testimony based on their various separate interviews with CL tended to show that on the night that JA babysat for CL and KS, JA played strip checkers with the children; JA took off his pants and underwear and touched CL's vaginal area with his penis; JA put his penis inside CL's vagina; CL put cream on JA's penis and he put cream on her vagina; they looked at pictures of nude people in magazines and they watched movies showing nude people.
The respondent, JA, presented evidence which tended to show that during the evening in question, he, and the children went into the bedroom looking for a ball. While in the bedroom, KS found a game of strip checkers and asked if they could play with it. JA agreed and after playing with the game for a few minutes, KS took off his pants and underpants and told CL to do the same. CL took off her clothes and then put them back on. Afterwards, JA put the games back and they watched television until CL's parents returned. JA denied taking off any of his clothes; touching or fondling CL; looking at any adult magazines or movies; and pointing a gun at CL.

II
Respondent first assigns error to the trial judge's denial of his motion to dismiss the two petitions in this case on the ground that there was insufficient evidence to sustain a finding of guilt as to either first degree sexual offense or assault by pointing a gun.
From the outset, it should be noted that a motion to dismiss a juvenile petition is recognized by North Carolina statutory and case law. N.C.Gen.Stat. § 7A-631 provides that "all rights afforded adult offenders" are conferred upon respondents in juvenile adjudication hearings, subject to certain exceptions which are not applicable to the case at bar. In In re Dulaney, 74 N.C.App. 587, 328 S.E.2d 904 (1985), this court held that a juvenile respondent "is entitled to have the evidence evaluated by the same standards as apply in criminal proceedings against adults." Id. at 588, 328 S.E.2d at 906.
As in adult proceedings, "in order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged." In re Bass, 77 N.C.App. 110, 115, 334 S.E.2d 779, 782 (1985); see also, State v. Myrick, 306 N.C. 110, 291 S.E.2d 577 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact which may be drawn from the evidence. State v. Easterling, 300 N.C. 594, 268 S.E.2d 800 (1980).
We will consider each charge in the case at bar separately to determine whether the evidence, in the light most favorable to the State, establishes the material elements of each charge sufficient to withstand a motion to dismiss.

A. Assault By Pointing A Gun.
As to the charge that the respondent committed assault by pointing a gun, he contends that the evidence is insufficient to show that he intentionally and deliberately pointed the gun at CL. We disagree. CL testified that JA extracted the gun from one of her father's briefcases and pointed it at her. N.C.Gen.Stat. § 14-34 provides, in pertinent part,
If any person shall point any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded, he shall be guilty of an assault ...
The pointing of a gun need only be done without legal justification to constitute assault under Section 14-34. State v. Thornton, 43 N.C.App. 564, 259 S.E.2d 381 (1979). As respondent does not contend that he had a legal justification to point the gun at the victim, the evidence in the light most favorable to the State compels us to find that there was sufficient evidence to *876 withstand a motion to dismiss the petition for assault by pointing a gun.

B. First Degree Sexual Offense.
The respondent next alleges that the evidence was insufficient to support the conviction of first degree sexual offense. Specifically, he contends that the state failed to establish that there had been a sexual act committed. The elements of first degree sexual offense as applied to the facts of this case where the child-prosecutrix is 4 years old, are set forth in N.C.Gen.Stat. § 14-27.4(a)(1) which states as follows:
(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim:
The term "sexual act" as used in this statute means cunnilingus, fellatio, analingus, or anal intercourse. State v. DeLeonardo, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986). It also means the penetration, however slight, by any object into the genital or anal opening of another's body. Id.
Testimonial evidence by Ms. Mansour-Norris, an expert in pediatric social work, established that CL told her that JA put his penis in her vagina and that CL demonstrated with anatomically correct dolls, the male doll's penis going into the female doll's buttocks to show what JA did to her. This evidence was corroborated by the testimony Investigator Barringer of the Durham Police Department and CL's mother, both of whom were present at the interview between Ms. Mansour-Norris and CL.
Additionally, testimony by the physician, Dr. St. Claire, who examined and treated CL the day after the incident revealed that CL's anal area was red and irritated with a mucoid discharge that had not been present at previous examinations. Dr. St. Claire opined that the redness and discharge in the anal area "could be consistent with anal penetration". Further, Carolyn Cole testified that in an interview with her, CL stated that JA hurt her "bum" with his penis and that he touched and hurt her.
Most significantly, CL testified as follows:
Q. CL, when JA touched you, did he touch you on the inside or on the outside?
A. Outside.
Q. On the outside? Did he ever touch you with anything on the inside?
A. Hmm ... unh-unh.
....
Q. All right. And can you tell me where it is that your body got touched?
A. Hmm ... just on my bum.
Q. And who touched your bum?
A. Hmm ... JA.
Q. What did he touch your bum with?
A. His penis.
This evidence, in the light most favorable to the State and allowing every reasonable inference to be resolved in favor of the State, is sufficient to establish each element of sexual offense to withstand a motion to dismiss.

III
Respondent next assigns error to the admission of hearsay testimony to substantively prove an element of first degree sexual offense. His argument is two-fold: 1) that the trial court improperly allowed as evidence inadmissible and prejudicial hearsay testimony, and 2) that such evidence was admitted in violation of his constitutional right to confrontation. We will address each of these contentions separately.

A. Admissibility of the Hearsay
Respondent contends that the hearsay statements of Mrs. L, Carolyn Cole, Donna Mansour-Norris and Investigator Barringer were improperly admitted and that the admission of such evidence requires dismissal of the charge of first degree sexual offense.
First, we note that the testimony of Carolyn Cole was admitted for purposes of corroboration only. Respondent does not contend that the statements of this witness were not corroborative of the statements of *877 CL. As such, we find that her testimony was properly admitted for that purpose.
As to the hearsay testimony of Ms. Mansour-Norris, respondent contends that the testimony was not admissible hearsay because the interviews conducted with CL were for the purpose of preparing for litigation and not for the purpose of medical diagnosis. With respect to statements made for purposes of medical diagnosis and treatment, N.C.R.Evid. 803(4) (1988) provides that the following statements are not excluded by the hearsay rule:
(4) Statements for Purposes of Medical Diagnosis or Treatment.Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
In defining the pertinency of medical diagnosis or treatment, this court, in State v. Jones, 89 N.C.App. 584, 367 S.E.2d 139 (1988), stated that:
In determining the purpose of a medical examination our Courts have considered the following factors: (1) whether the examination was requested by persons involved in the prosecution of the case; (2) the proximity of the examination to the victim's initial diagnosis; (3) whether the victim received a diagnosis or treatment as a result of the examination; and (4) the proximity of the examination to the trial date.
89 N.C.App. 584, 591, 367 S.E.2d 139, 144 (citations omitted).
Considering the facts of this case in light of the factors set forth in Jones, supra., we find that: 1) CL was brought to Dr. Saint Claire by her mother for medical evaluation the day after she revealed the incident to her mother. Moreover, the Duke Child Protection Team coordinated its findings with the physician to constitute the team's medical evaluation. 2) The proximity of the examination to diagnosis was one day; Mrs. L took CL to the clinic the next day after seeing Dr. St. Claire. 3) CL was seen by Ms. Mansour-Norris for one month after she was first diagnosed as being sexually abused. She was again seen by Dr. St. Claire for follow-up on the treatment which she recommended. 4) The trial was held approximately three months after the last visit with Dr. St. Claire. On these facts, we find that the statements CL made to Ms. Mansour-Norris were for the purpose of medical diagnosis or treatment. Accordingly, Ms. Mansour-Norris' testimony that CL told her that JA anally penetrated her is admissible as a statement for the purpose of medical diagnosis or treatment within the meaning of Rule 803(4). Accord, Jones, 89 N.C.App. 584, 367 S.E.2d 139 (hearsay statements made to a Duke Child Protective Team social worker held admissible despite the fact that the victim's mother took her to Duke Medical Center Pediatric Clinic on the recommendation of the prosecuting attorney).
As to the hearsay statements of Investigator Barringer, respondent contends that this testimony did not qualify as a statement made for the purpose of medical diagnosis within the meaning of N.C.R.Evid. 803(4) (1988) as Investigator Barringer was neither a physician nor a psychiatrist.
Investigator Barringer's testimony does not fall within any recognized hearsay exception, and thus, should not have been admitted. However, as Investigator Barringer heard the out of court declarations at the same time and under the same circumstances as Ms. Mansour-Norris, the admission of Investigator Barringer's hearsay testimony is harmless error. Inasmuch as we have determined that Ms. Mansour-Norris' hearsay testimony was properly admitted, the fact that Investigator Barringer testified to information overheard at the same time as Ms. Mansour-Norris negates the possibility that defendant was prejudiced by its admission. We find that there was no prejudicial error in the admission of Investigator Barringer's hearsay testimony. This assignment of error is overruled.

B. The Right to Confrontation
Respondent further assigns error to the trial judge's admission of hearsay testimony *878 against him when the declarant testified in court and did not testify as to the hearsay evidence presented by other witnesses. He contends that he was denied his constitutional right to cross-examination in that the declarant was available and the admitted hearsay testimony did not fit into any exceptions to the hearsay rule.
The Supreme Court of the United States set forth the following two-part test for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause:
First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate `indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."
Idaho v. Wright, ___ U.S. ___, ___, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651-652 (1990) (quoting Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the United States Supreme Court explained that the effect of the Confrontation Clause is to bar admission of some evidence what would otherwise be admissible under an exception to the hearsay rule. The Court, in Green also set forth the relationship between hearsay rules and the Confrontation Clause:
While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception.
Id., 399 U.S. 149, 155-56, 90 S.Ct. 1930, 1933-1934, 26 L.Ed.2d 489, 495 (citations omitted).
Further, in Green, the Court set forth the underlying purpose for the Confrontation Clause:
Our own decisions seem to have recognized at an early date that it is [the] literal right to confront the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

"The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242-243, 39 L.Ed. 409, 411, 15 S.Ct. 337 (1985).
Green, 399 U.S. 149, 157-58, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 496-97 (emphasis added).
The crucial difference between the requirements of the Confrontation Clause and the hearsay rule is the unavailability of the witness for cross-examination. The exceptions under which the hearsay testimony in this case was admitted do not require the witness to be unavailable. However, for purposes of the Confrontation Clause the declarant must be unavailable, either legally or factually.
Respondent alleges that he did not have an opportunity to cross examine CL as to the hearsay testimony of Ms. Mansour-Norris *879 and Investigator Barringer. The facts clearly do not support his argument. CL was available and, indeed, testified at trial and was subject to cross-examination. On direct examination, CL answered questions to establish her competency to testify and at no point during or after her testimony did respondent challenge the competency of her testimony. As such, she was not unavailable for cross-examination. Respondent could have recalled the witness, subject to the trial judge's discretion. Having failed to do so, he cannot be heard to complain on appeal and therefore, this assignment of error is overruled.

IV
For the foregoing reasons, we find
No error.
PHILLIPS and EAGLES, JJ., concur.