STATE OF NORTH CAROLINA v. MONTOYAE DONTAE SHARPE

No. 45A96

(Filed 31 July 1996)

1. **Evidence and Witnesses § 983 (NCI4th)— first-degree murder—confession by another who committed suicide—not admissible as dying declaration**

The trial court did not err in a noncapital first-degree murder prosecution by not allowing testimony concerning statements from another man who told his girlfriend that he had killed the victim and that he would kill himself before he went to jail for

STATE v. SHARPE

[344 N.C. 190 (1996)]

killing a white man where the man later committed suicide. Although defendant contended that the testimony was admissible as the dying declaration of an unavailable declarant, nothing in the circumstances surrounding the making of these statements suggests that he was in immediate danger of being arrested, so that it was not established that the declarant believed his death was imminent when he made these statements, and, given the girlfriend's testimony that the declarant had threatened or attempted suicide on more than one prior occasion, it is altogether unclear whether his suicide was precipitated by his purported killing of the victim or by a different, wholly unrelated cause. N.C.G.S. § 8C-1, Rule 804(b)(2).

**Am Jur 2d, Evidence §§ 828-830.**

**Opinion of doctor or other attendant as to declarant's consciousness of imminent death so as to qualify his statement as dying declaration. 48 ALR2d 733.**

**Admissibility in criminal trial of dying declarations involving an asserted opinion or conclusion. 86 ALR2d 905.**

**Comment Note.—Statements of declarant as sufficiently showing consciousness of impending death to justify admission of dying declaration. 53 ALR3d 785.**

2. **Appeal and Error § 447 (NCI4th)— first-degree murder— confession of another who committed suicide—admissibility argued on one theory at trial—different theory not allowed on appeal**

Defendant could not argue on appeal from a noncapital first-degree murder prosecution that statements from another man who confessed to a girlfriend and later committed suicide were admissible as statements against penal interest where defendant had argued at trial (expressly, extensively, and with citations of authority) the state of mind and dying declaration hearsay exceptions. The State responded at trial only to those arguments, and the trial court expressly ruled on admissibility only under those grounds. Under these circumstances, it is well settled that defendant cannot argue for the first time on appeal this new ground for admissibility.

**Am Jur 2d, Appellate Review §§ 690, 691.**

STATE v. SHARPE

[344 N.C. 190 (1996)]

When will federal court of appeals review issue raised by party for first time on appeal where legal developments after trial affect issue. 76 ALR Fed. 522.

Circumstances under which federal appellate court will allow Federal Deposit Insurance Corporation (FDIC) or Resolution Trust Corporation (RTC) to raise on appeal issues not raised at trial involving financial institution put in receivership or conservatorship after trial. 120 ALR Fed. 469.

What issues will the Supreme Court consider, though not, or not properly, raised by the parties. 42 L. Ed. 2d 946.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Parker, J., at the 24 July 1995 Criminal Session of Superior Court, Pitt County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 15 May 1996.

*Michael F. Easley, Attorney General, by Marilyn R. Mudge, Assistant Attorney General, for the State.*

*Steven M. Fisher for defendant-appellant.*

WHICHARD, Justice.

In July 1995 defendant was tried noncapitally, convicted of the first-degree murder of George Radcliffe, and sentenced to life imprisonment. He appeals from his conviction and sentence. We hold that defendant received a fair trial, free of prejudicial error.

The State's evidence tended to show that on 11 February 1994, two witnesses observed defendant, a known drug dealer, involved in a drug deal. Fifteen-year-old Charlene Johnson, who knew defendant, testified at trial that sometime after 9:00 p.m. on 11 February 1994, she was walking on 6th Street in Greenville and saw defendant and Mark Joyner talking to a white man and standing next to a pickup truck. The white man requested "a twenty" but did not have enough cash to pay for it. Defendant told the man that he had to have the money "straight up" and shoved him. When the white man cursed defendant, defendant shot him. Johnson heard two shots and observed defendant and Joyner lift the white man into the pickup truck and drive the truck into a field. Beatrice Stokes, a regular drug

STATE v. SHARPE

[344 N.C. 190 (1996)]

user who had previously purchased drugs from defendant and Joyner in the area in which the murder occurred, testified that as she was walking on Sheppard Street near 6th Street on the night of 11 February 1994, she observed defendant, Joyner, and two or three others standing next to a truck. She heard an argument and a gunshot and noticed that defendant was holding a gun.

Defendant's aunt, Patricia Ann Ward, and her next-door neighbor, Patricia Hicks, testified on defendant's behalf. Ward stated that defendant ate dinner at her house from 8:15 to 8:45 p.m., and Hicks testified that defendant was at her house from 9:00 to 9:45 p.m. and from 10:30 to 11:30 p.m. on the night of the murder.

Defendant also offered the testimony of Tracy Highsmith. On *voir dire*, Highsmith testified that on the night of the murder, her boyfriend, Damien Smith, left their home shortly before 9:00 p.m. When he returned several hours later, he told Highsmith that he had seen a white man sitting in a truck and that this man had wanted to "buy some." Smith added that he had robbed and shot the man but did not know whether he had killed him. The following day, upon discovering that the man had died, Smith admitted to having killed the man and stated that "he would kill himself before he [would] go to jail for killing a white man." He repeated this comment to Highsmith numerous times over the next three weeks and confessed two or three times that he had shot the man who was killed on 6th Street. Twenty-seven days after the murder, Smith committed suicide by shooting himself in the head. Highsmith testified that she had noticed a drastic change in Smith's demeanor over this period but admitted that he had been suicidal before 11 February 1994. The trial court sustained the prosecutor's objection to the admission of this testimony on the basis that it was hearsay and did not fall within the dying declaration or state of mind exceptions to the rule against the admission of hearsay evidence. Defendant had expressly argued these grounds, and only these grounds, as the basis for admissibility of the proffered evidence.

[1] Defendant first argues that the trial court erred in not allowing Highsmith's hearsay testimony regarding Smith's statements because those statements were admissible as having been made under a belief of impending death. Pursuant to Rule 804(b)(2) of the North Carolina Rules of Evidence, the dying declaration of an unavailable declarant is admissible only where (1) the statement appears trustworthy because it is made at a time when the declarant believes his death to be imminent, and (2) the statement concerns the cause or circum-

stances of his impending death. N.C.G.S. § 8C-1, Rule 804(b)(2) (1992); *State v. Penley*, 318 N.C. 30, 40, 347 S.E.2d 783, 789 (1986). Following his confession, Smith stated that he would kill himself before he would go to jail for killing a white man, but nothing in the circumstances surrounding the making of these statements suggests that he was in immediate danger of being arrested. Thus, it was not established that Smith believed his death was imminent when he made these statements.

Nor did Smith's statement that he would kill himself before he would go to jail for killing a white man satisfy the second prong of the test. Given Highsmith's testimony that Smith had threatened or attempted suicide on more than one occasion before the events of 11 February 1994, it is altogether unclear whether his suicide was precipitated by his purported killing of the victim or by a different, wholly unrelated cause. In light of this significant ambiguity, the trial court could conclude that the statements did not relate to the cause or circumstances of Smith's impending death with sufficient certainty to render them admissible under the dying declaration exception to the rule against hearsay.

[2] Defendant does not contest on appeal the trial court's determination that Smith's statements were not admissible as statements of a present mental, emotional, or physical condition pursuant to N.C. R. Evid. 803(3). Instead, defendant contends, for the first time, that Smith's statements were admissible as statements against his penal interest pursuant to N.C. R. Evid. 804(b)(3).

This Court has long held that where a theory argued on appeal was not raised before the trial court, "the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934); *see also State v. Benson*, 323 N.C. 318, 321-22, 372 S.E.2d 517, 518-19 (1988) (where defendant relied on one theory at trial as basis for written motion to suppress and then asserted another theory on appeal, "no swapping horses" rule applied); *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions."); *State v. Woodard*, 102 N.C. App. 687, 696, 404 S.E.2d 6, 11 (where defendant objected on one theory at trial to denial of his request for an instruction and then asserted different theory on appeal, "no swapping horses" rule applied), *disc. rev. denied and appeal dismissed*, 329 N.C. 504, 407

IN RE AMMONS

[344 N.C. 195 (1996)]

S.E.2d 550 (1991). Here, defendant argued to the trial court—expressly, extensively, and with citations of authority—only that the proffered evidence should be admitted under the state of mind and dying declarations exceptions to the rule against hearsay. The State responded only to those arguments, and the trial court expressly ruled on admissibility only under those grounds, stating:

> The Court finds the defendant has failed to carry [his] burden of proof regarding the admissibility of the statement of one Damien Smith under either the state of mind exception [to] the hearsay rule or the dying declaration exception to the hearsay rule and the court rules such testimony [to] be inadmissible and sustains the objection of the State.

See Hunter, 305 N.C. at 112, 286 S.E.2d at 539 (noting, in denying review of argument raised for first time on appeal, that trial court "obviously based" its ruling on theory presented to it). Under these circumstances, it is well settled in this jurisdiction that defendant cannot argue for the first time on appeal this new ground for admissibility that he did not present to the trial court. Accordingly, the trial court did not err in excluding the proffered testimony. Defendant's assignment of error is overruled.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.