STATE OF NORTH CAROLINA v. FLOYD CURTIS WADDELL

No. COA96-1530

(Filed 18 August 1998)

### 1. Evidence— hearsay—medical evaluation—statements of abused child—unavailable to testify

The trial court did not err in a prosecution for first-degree sexual offense, taking indecent liberties with a minor, lewd and lascivious acts, and felony child abuse by admitting the testimony of a licensed Psychological Associate relating the child's statements during their interview. It is undisputed that the challenged testimony constituted hearsay; however, applying the factors in *State v. Jones*, 89 N.C. App 584, the statements were for the purpose of medical diagnosis or treatment within the meaning of the statutory hearsay exception set out in N.C.G.S. § 8C-1, Rule 803(4). The testimony was necessitated by the child's unavailability due to his lack of competency as a witness and statements relevant to medical diagnosis or treatment are considered "necessarily trustworthy" in North Carolina. Furthermore, the substance of the testimony was also contained in a detective's hearsay recitation of statements made by the child to which defendant neither objected at trial nor assigned error on appeal.

### 2. Evidence— hearsay—reliability—incompetent child

A defendant in a prosecution arising from the sexual abuse of a child failed to cite authority supporting his contention that the child's incompetence as a witness should have deprived hearsay recitations of his statements of enough reliability to be admitted as substantive evidence of guilt; however, the statements were admissible under the statutory exception of statements for the purpose of medical diagnosis or treatment and are considered necessarily trustworthy. Moreover, defendant's assertion was specifically rejected in *State v. Rogers*, 109 N.C. App. 491.

### 3. Witnesses— child—not competent to testify

The trial court did not abuse its discretion in a prosecution arising from the sexual abuse of a child by ruling the victim not competent to testify where the court's conclusion that the child was unable to express to the court his understanding of what it is to tell the truth and what it is to tell a lie was amply justified by the record.

## 4. Criminal Law— instructions—child victim not competent to testify—refused

The trial court did not err in a prosecution arising from the sexual abuse of a child by refusing defendant's requested instruction that the victim was not competent to testify where his statements were admitted through the testimony of others. The statements were made for the purpose of medical treatment or diagnosis and are considered "necessarily trustworthy."

## 5. Constitutional Law, Federal— Confrontation Clause—videotape interview

There was no error in a prosecution arising from the sexual abuse of a child where the trial court admitted a videotape of an interview with the child by a licensed Psychological Associate. Defendant's objection at trial was not to the propriety of the foundation evidence, but was identical to a Confrontation Clause challenge to the live testimony of the Psychological Associate rejected elsewhere in the opinion.

## 6. Evidence— opinion—characterization of child abuse victim's testimony

The trial court did not err in a prosecution arising from the sexual abuse of a child by admitting a licensed Psychological Associate's descriptions of the child's actions with anatomically correct dolls as illustrating fellatio and anal intercourse. Assuming that the testimony was tendered in the witness's capacity as a child sex abuse expert, such testimony simply related her opinion, based upon her specialized knowledge, as to what the child had demonstrated and was without question helpful to the jury. Moreover, a contextual reading of the testimony indicates that it represented her non-expert instantaneous conclusion, based upon her perception of the child's appearance, condition and actions, and thus constituted a "shorthand statement of fact" admissible under N.C.G.S. § 8C-1, Rule 701.

## 7. Evidence— opinion—social worker—child abuse victim's statement

There was no prejudicial error in a prosecution arising from the sexual abuse of a child in the admission of a statement in a social worker's report that the child was not telling everything where, on cross-examination, the social worker was asked whether she wrote down the information obtained from the child during their interview, she responded that she had

typed her report, defendant posed specific questions regarding the content of the report, and the State on redirect requested that she read into evidence the entire report, which included her opinion that the child was not telling everything. Assuming that the challenged evidence was not admissible, any such error was not prejudicial when weighed against the substantive evidence against defendant.

## 8. Criminal Law— constitutional issues—not raised at trial

An assignment of error asserting violation of multiple state and federal constitutional rights was not addressed on appeal from convictions arising from the sexual abuse of a child where the constitutional questions were not raised and decided at trial.

## 9. Sentencing— mitigating factors—acknowledgment of wrong-doing—inculpatory statement—repudiated at trial

The trial court did not err in a prosecution arising from the sexual abuse of a child by not finding as a mitigating factor during sentencing that defendant voluntarily acknowledged wrong-doing where he repudiated his inculpatory statement by moving to suppress it at trial.

## 10. Sexual Offenses— abused child—sufficiency of evidence

The trial court did not err by denying defendant's motions to dismiss charges for first-degree sexual offense, taking indecent liberties with a minor, lewd and lascivious acts, and felony child abuse. The record reveals substantial evidence of each element of the crimes charged and that defendant was the perpetrator.

Judge GREENE dissenting.

Appeal by defendant from judgments entered 25 August 1995 by Judge Clifton W. Everett, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 17 September 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Anita LeVeaux-Quigless, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

STATE v. WADDELL

[130 N.C. App. 488 (1998)]

JOHN, Judge.

Defendant appeals judgments entered upon conviction by a jury of one count of first-degree sexual offense, three counts of taking indecent liberties with a minor, three counts of lewd and lascivious acts and two counts of felony child abuse. Defendant contends the trial court erred by: 1) admitting certain hearsay testimony, 2) finding the alleged minor victim (the child) incompetent to testify and not instructing the jury thereon, 3) admitting as substantive evidence the child's videotaped manipulations of anatomically correct dolls, 4) permitting certain expert witness opinion testimony, 5) allowing lay witness testimony regarding the child's veracity, 6) failing to "instruct the jury on the *actus reus* that supports each charge," 7) failing to find as a mitigating circumstance that defendant voluntarily acknowledged wrongdoing in connection with the crimes charged, and 8) denying defendant's motion to dismiss. We are unpersuaded by defendant's arguments.

The State's evidence at trial tended to show the following: Defendant's former wife, Connie Waddell (Ms. Waddell), testified that the child, defendant's son, was born 4 July 1988. Subsequent to the divorce, Ms. Waddell was awarded custody of the child with defendant being accorded visitation every other weekend commencing March 1993. According to Ms. Waddell, the child developed behavioral problems after beginning visitation with his father, such that "[a]ny time he got mad with anybody he would hit them" and "was calling them real ugly names." He began wetting the bed after visitation privileges were increased 27 August 1994, and exhibited other behavioral changes "like masturbation" during which "[h]e would take and put his hand on his privates and do his hand up and down." Ms. Waddell related she had not seen the child do this previously, and "he told me his daddy done [like] that." After a 4 September 1994 visit with defendant, Ms. Waddell continued, "[the child] started touching his privates, masturbating and saying my daddy, my daddy, my daddy," and "[h]e said his daddy let him touch his privates."

A twelve-hour visitation concluded 10 September 1994, following which the child told Ms. Waddell he and his father had washed the car together in the nude. Further, "he told me that his father had him to masturbate him and he saw it shoot off." Ms. Waddell stated the child voluntarily related these events without her prompting. She subsequently notified Kim Sekulich (Sekulich) of the Johnston County Department of Social Services (DSS), and then took the child to Wake

Medical Center (the Center), where he received a physical exam and met with a psychiatrist. On cross examination, Ms. Waddell related, "[h]e told me that his father put his penis in his mouth."

Following a *voir dire* hearing, the trial court determined the child was unable to "express to the Court his understanding of what it is to tell the truth and what it is to tell a lie," and concluded the child lacked the requisite competency to testify. Defendant entered an exception and requested a jury instruction regarding the incompetency ruling. His request was denied.

Sekulich testified she interviewed the child at his school on 15 September 1994, at which time he was six years old. According to Sekulich, the child told her about washing the car in the nude with his father, described seeing his father masturbate and said his father "shot it off in the air." Sekulich indicated the child's answers to her questions were spontaneous, and that she did not suggest "correct" answers. The child used the word "peanut" to describe his genitalia, and reported he and his father touched each other's genitals. The child also drew a picture of his father's penis.

Sekulich subsequently filed a petition alleging defendant's abuse and neglect of the child. She related that, during a hearing on the petition, defendant voluntarily took the witness stand and acknowledged "he had a problem blacking out. He said that he woke up and [the child] had his mouth on his stuff and that he told [the child] to stop that. That wasn't nice."

On redirect examination, Sekulich was asked to read her entire report of the interview with the child, which included the statement, "[social worker] feels [the child] is not telling everything." Defendant's timely objection to this portion of her testimony was overruled.

Lauren Rockwell-Flick (Rockwell-Flick), a licensed Psychological Associate employed at the Center, was presented by the State as an expert in the field of child sexual abuse. Rockwell-Flick related that she had worked at the Center for five years in the area of child sexual abuse and child sexual abuse evaluation, and that she held a M.A. degree in Clinical Community Psychology and taught pediatric students from the UNC-CH School of Medicine.

Rockwell-Flick testified, *inter alia*, as follows: She interviewed the child 21 September 1994, using anatomically correct dolls. The child again described washing his father's automobile while wearing

no clothes, identified his genitals as "peanut," described seeing his father masturbate to the point of ejaculation, and stated defendant touched the child's genitals under his clothes. When asked by Rockwell-Flick to demonstrate what his father did, the child said "he takes his pants off . . . and his shirt," and "took the peanut of the adult male doll and put it in the mouth of the boy doll." She asked, "does his peanut touch your mouth?" and he responded affirmatively. Rockwell-Flick inquired whether defendant ever did anything to the child's rectum; the latter took both the boy and adult male dolls and began "touching the adult male doll's penis to the rectum of the boy doll."

During a second interview between Rockwell-Flick and the child on 27 September 1994, the latter repeated demonstrations of oral and anal sex with the adult male and boy anatomical dolls. The child also indicated his penis had been in defendant's mouth at some point. Video tapes of interviews between Rockwell-Flick and the child were admitted into evidence over defendant's objection, and one tape was played for the jury. Rockwell-Flick expressed her opinion that the child's statements and behavioral changes were consistent with a history of sexual abuse.

Dr. Elizabeth Ann Gaddy Witman (Dr. Witman), a physician and Assistant Clinical Professor of Pediatrics at the UNC-CH School of Medicine, testified as an expert in the field of pediatrics and child sex abuse. She conducted a physical examination of the child on or about 21 September 1994. In Dr. Witman's opinion, the child "probably had been sexually abused."

Detective Mike Smith (Detective Smith) described his 23 September 1994 interview with defendant, at which time Detective Smith was in charge of investigating child abuse offenses for the Wayne County Sheriff's Department. After being advised by Detective Smith of his Miranda rights, defendant made an inculpatory statement which was admitted at trial over defendant's motion to suppress. After taking the statement, Detective Smith obtained a warrant for defendant's arrest.

Detective Smith subsequently interviewed the child. Using anatomically correct dolls, the child explained what he and his father did when they were together, demonstrating acts of oral and anal sex. The child related he and his father had put lotion on each other's genitals, and that "after putting lotion on his daddy's peanut, stuff came out of the peanut into the air."

Defendant testified on his own behalf, acknowledging three prior convictions for indecent exposure and a conviction of felony child abuse involving the death of his infant son from a previous marriage. When asked about the automobile washing incident, defendant responded he was wearing swimming trunks and that the child ran up to him, grabbed defendant's penis and put it in his mouth. Defendant later testified he was wearing jeans at the time.

In addition, defendant admitted the child put lotion on defendant's penis, that on another occasion the child came into the bathroom while defendant was masturbating, and that after defendant fell asleep on the couch the same day, the child placed defendant's penis in his mouth. Defendant denied performing any anal sexual acts with the child.

Pursuant to the jury's guilty verdicts, defendant was sentenced to life imprisonment for first-degree sexual offense, three consecutive ten-year terms for taking indecent liberties with a minor and committing a lewd and lascivious act, and two consecutive ten-year terms for felony child abuse. From these judgments and convictions, defendant gave timely notice of appeal.

I.

[1] Defendant first assigns error to the admission of Rockwell-Flick's hearsay testimony relating the child's statements during their interview. The trial court did not err in this regard.

It is undisputed that the challenged testimony constituted hearsay. The Confrontation Clauses in the Sixth Amendment to the United States Constitution and Article I Section 23 of the North Carolina Constitution prohibit the State from introducing hearsay evidence in a criminal trial unless the State: 1) demonstrates the necessity for using such testimony, and 2) establishes "the inherent trustworthiness of the original declaration." *State v. Gregory*, 78 N.C. App. 565, 568, 338 S.E.2d 110, 112 (1985), *appeal dismissed and disc. review denied*, 316 N.C. 382, 342 S.E.2d 901 (1986).

In the circumstance where the State's case depends in the main upon the child sex abuse victim's statements and the child is incompetent to testify, "[t]he unavailability of the victim due to incompetency and the evidentiary importance of the victim's statements adequately demonstrate the necessity prong" of this test. *Id.* at 568, 338 S.E.2d at 112-13. In the case *sub judice*, Rockwell-Flick's testimony regarding the interviews was necessitated by the child's unavailabil-

ity due to his lack of competency as a witness. Accordingly, the first prong of the test set out in *Gregory* was satisfied.

As to the "inherent trustworthiness" prong of the *Gregory* test, we note the trial court rendered no findings of fact and conclusions of law on the trustworthiness of the child's statements to Rockwell-Flick, thus impeding effective appellate review. *See In re Lucas*, 94 N.C. App. 442, 447, 380 S.E.2d 563, 566 (1989). Nonetheless, this Court has observed that

> [a] person, even a young child, making statements to a physician for the purpose of medical diagnosis and treatment has a strong motivation to be truthful.

*Gregory*, 78 N.C. App. at 569, 338 S.E.2d at 113 (citation omitted). Moreover, statements relevant to medical diagnosis or treatment have been statutorily recognized as an exception to the rule prohibiting hearsay testimony, *see* N.C.R. Evid. 803(4) (Statements for Purposes of Medical Diagnosis or Treatment), and are thereby considered "necessarily trustworthy" in this jurisdiction. *Lucas*, 94 N.C. App. at 448, 380 S.E.2d at 567; *see also State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998) ("where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied").

However, defendant complains that the "sole function" of Rockwell-Flick's interview with the child "was to verify abuse for the purpose of litigation." We do not agree.

Certain factors bear upon the determination of the purpose of a medical examination:

> (1) whether the examination was requested by persons involved in the prosecution of the case; (2) the proximity of the examination to the victim's initial diagnosis; (3) whether the victim received a diagnosis or treatment as a result of the examination; and (4) the proximity of the examination to the trial date.

*State v. Jones*, 89 N.C. App. 584, 591, 367 S.E.2d 139, 144 (1988) (citations omitted).

The record *sub judice* indicates Ms. Waddell contacted DSS promptly after the child related to her details of the 10 September 1994 car washing incident and of defendant demonstrating masturbation to the child, and that Sekulich received the report. Pursuant to

Sekulich's request, Ms. Waddell then took the child to the Center on or about 21 September 1994 for a medical evaluation, *i.e.*, "[s]o he could see a doctor, have a physical to see if there was any sexual abuse."

At the Center, evaluation of the child was assigned to the Child Sexual Abuse Team (the Team). During her testimony, Rockwell-Flick described the Team as including a physician and other health care professionals, the district attorney, a guardian ad litem, and law enforcement officials.

The Team accepted referrals of children suspected of having been sexually abused. The procedures employed by the Team included an intake worker initially documenting information such as the child's name and the adult accompanying the child. Next, Rockwell-Flick would secure from the parent or guardian relevant social, medical, and behavioral history, and then interview the child. Thereafter, Rockwell-Flick would meet with the physician to discuss the histories furnished by the parent or guardian and that related by the child, whereupon the physician would conduct a physical exam of the child. Thereafter, the physician would meet with the parent or guardian to discuss the physician's "impressions" and recommendations for a future course of action or treatment for the child.

Defendant's trial was conducted during the 21 August 1995 Criminal Session of the Wayne County Superior Court, eleven months following Rockwell-Flick's interview of the child at the Center. Nothing in the record indicates the prosecutor or law enforcement officials were involved in the decision to have the child evaluated by the Team.

Applying the *Jones* factors to the foregoing, we conclude the child's statements to Rockwell-Flick were for the purpose of medical diagnosis or treatment within the meaning of the statutory hearsay exception set out in N.C.R. Evid. 803(4). *See Jones*, 89 N.C. App. at 591-93, 367 S.E.2d at 144-45 (child's hearsay statements to Duke Child Protection Team (Team) social worker admissible despite prosecutor's recommendation that child be examined by Team); *see also In re J.A.*, 103 N.C. App. 720, 727, 407 S.E.2d 873, 877 (1991) (hearsay testimony of expert in pediatric social work met *Jones* test); *Lucas*, 94 N.C. App. at 449, 380 S.E.2d at 567 (although examining physician did not treat child brought for examination at suggestion of police officer and exam "prepare[d physician] for his testimony at trial, [preparation for testimony] was clearly not the sole purpose for the

examination") (citation omitted). Rockwell-Flick's hearsay testimony thus "did not infringe upon the defendant's constitutional right to confrontation as the evidence was both necessary and trustworthy." *Lucas*, 94 N.C. App. at 449, 380 S.E.2d at 568; *see also Jackson*, 348 N.C. at 652, 503 S.E.2d at 106.

We further note that the substance of Rockwell-Flick's testimony regarding what the child told her was also contained in Detective Smith's hearsay recitation of statements made to him by the child. Defendant neither objected to this evidence at trial nor assigns error to it on appeal. Our courts have consistently held

> that where evidence is admitted over objection, and the same evidence is later admitted without objection, the benefit of the objection is lost.

*State v. Beasley*, 104 N.C. App. 529, 532, 410 S.E.2d 236, 238 (1991) (citation omitted).

[2] However, defendant concludes his argument addressed to Rockwell-Flick's testimony by asserting that

> [the child's] incompetence, which made his sworn testimony unreliable as a matter of law, should have deprived the hearsay of enough reliability to be admitted in a criminal case as substantive evidence of a citizen's guilt.

Assuming *arguendo* defendant's contention bears consideration, he fails to cite any authority in support thereof, and it is therefore deemed abandoned. *See* N.C.R. App. P. 28(b)(5) ("body of the argument shall contain citations of the authorities upon which the appellant relies," and assignments of error in support of which no authority cited "will be taken as abandoned").

Moreover, in that the child's out-of-court statements to Rockwell-Flick were admissible under the statutory exception of statements for the purpose of medical diagnosis or treatment, they are considered "necessarily trustworthy" in this jurisdiction. *Lucas*, 94 N.C. App. at 448, 380 S.E.2d at 567; *see also Jackson*, 348 N.C. at ——, 503 S.E.2d at ——; *but see Gregory*, 78 N.C. App. at 568, 338 S.E.2d at 112 (inherent trustworthiness must be determined on case-by-case basis and "[m]erely classifying a statement as a hearsay exception does not automatically satisfy the requirements of . . . the Sixth Amendment"); *see also People v. Cherry*, 411 N.E.2d 61, 68 (Ill. Ct. App. 1980) (statement qualifying as spontaneous declaration "is reliable and admissi-

ble regardless of the competency of the declarant, since the reliability of the statement comes from the circumstances under which the statement was made").

Finally, defendant's assertion was specifically rejected by this Court in *State v. Rogers*, 109 N.C. App. 491, 428 S.E.2d 220, *cert. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1008, 128 L. Ed. 2d 495 (1994) as follows:

> We reject at the outset defendant's intimation that the trial court's finding that [the child] was incompetent as a witness renders [the child's] out-of-court statements per se, or even presumptively, unreliable. We also reject that a finding of incompetency under the standards set forth in Rule 601(b) is inconsistent as a matter of law with a finding that the child may nevertheless be qualified as a declarant out-of-court to relate truthfully personal information and belief.

*Id.* at 498, 428 S.E.2d at 224; *see also Idaho v. Wright*, 497 U.S. 805, 824, 111 L. Ed. 2d 638, 658 (1990), *cert. denied*, 513 U.S. 1130, 130 L. Ed. 2d 886 (1995) ("we reject [the] contention that [the child's] out-of-court statements . . . are per se unreliable, or at least presumptively unreliable, on the ground that the trial court found [the child] incompetent to testify at trial").

In short, defendant's first argument is unavailing.

## II.

**[3]** Defendant next assigns error to the trial court's finding the child not competent to testify and in failing to apprize the jury of this ruling. We disagree.

Under N.C.R. Evid. 601(b),

> [a] person is disqualified to testify as a witness when the court determines that he is . . . incapable of understanding the duty of a witness to tell the truth.

Determination of the competency of a witness "rests in the sound discretion of the trial judge in the light of his examination and observation of the particular witness." *State v. Turner*, 268 N.C. 225, 230, 150 S.E.2d 406, 410 (1966). A trial court may be reversed in such instance only upon a showing that its ruling could not have been the result of a reasoned decision. *State v. Hicks*, 319 N.C. 84, 89, 352 S.E.2d 424, 426 (1987).

STATE v. WADDELL .

[130 N.C. App. 488 (1998)]

The trial court herein conducted an extensive *voir dire* hearing during which the child repeatedly was asked if he would promise to tell the truth in court, to which inquiry the child consistently replied, "No." When the court asked, "Don't you know it is good to tell the truth?" the child responded, "No." To the inquiry, "if I told you that you were ten years old, would that be the truth or a lie?" the child answered, "The truth." In sum, the court's conclusion the child was unable to "express to the Court his understanding of what it is to tell the truth and what it is to tell a lie," is amply justified by the record, and the court did not abuse its discretion by ruling the child not competent to testify.

**[4]** Moreover, save for the general assertion that defendant was denied "a fundamentally fair trial and his constitutional right to confront the evidence against him," defendant cites no authority in support of his assignment of error that "the trial court erred in not instructing the jury that the prosecuting witness is not competent." This assignment of error is therefore deemed abandoned. *See* N.C.R. App. P. 28(b)(5) (assignments of error in support of which no authority is cited "will be taken as abandoned").

In addition, it does not appear the trial court erred in refusing the requested instruction. *Cf. Jones*, 89 N.C. App. at 597, 367 S.E.2d at 147 (no abuse of discretion *to inform* jury four-year-old child victim had been found incompetent to testify) (emphasis added); *see also Cherry*, 411 N.E.2d at 68 (no error for trial court to refuse instruction that child "was declared by this Court not to be a competent witness to testify at trial" because reliability of spontaneous declaration comes from circumstances under which it was uttered and not the competency of the declarant).

The decision of this Court, cited by the dissent for the proposition that a "child's inability to testify at trial [is] relevant to whether an earlier hearsay statement was trustworthy," in actuality states only that incompetency to testify at trial " '*might* be relevant' " (emphasis added) to the trustworthiness inquiry. *Rogers*, 109 N.C. App. at 498, 428 S.E.2d at 224 (quoting *Wright*, 497 U.S. at 825, 111 L. Ed. 2d at 658).

Significantly, moreover, the *Wright* decision quoted in *Rogers* concerned admissibility of the hearsay statements of an incompetent witness under the "residual hearsay exception." *See* N.C.R. Evid. 803(24). We reiterate that statements made for the purpose of medical treatment or diagnosis, such as those at issue *sub judice*, are con-

sidered "necessarily trustworthy" by our courts. *Lucas*, 94 N.C. App. at 448, 380 S.E.2d at 567; *see also Jackson*, 348 N.C. at 652, 503 S.E.2d at 106; *Wright*, 497 U.S. at 820, 111 L. Ed. 2d at 655 (persons making statements under "medical treatment" exception to hearsay rule "are highly unlikely to lie").

On the other hand, the "residual hearsay exception" does not possess "the imprimatur of judicial and legislative experience," *id.* at 817, 111 L. Ed. 2d at 653 (citation omitted), in acknowledging the reliability of statements falling thereunder. Accordingly, before such testimony may be admitted, the trial court must conduct a six-part inquiry, *State v. Smith*, 315 N.C. 76, 91-97, 337 S.E.2d 833, 844-47 (1985), including a consideration of whether the statement possessed sufficient " 'circumstantial guarantees of trustworthiness.' " *Id.* at 93, 337 S.E.2d at 844-45 (citation omitted). It is within *this* inquiry, under N.C.R. Evid. 803(24), as to " 'whether [an] earlier hearsay statement possessed particularized guarantees of trustworthiness,' " *Rogers*, 109 N.C. App. at 498, 428 S.E.2d at 224 (quoting *Wright*, 497 U.S. at 825, 111 L. Ed. 2d at 658), that incompetency of the child declarant as a witness " 'might be relevant.' " *Id.*

Based on the foregoing, therefore, we hold the trial court did not err either in ruling the child incompetent to testify or in denying defendant's subsequent request for a corresponding jury instruction.

## III.

**[5]** Defendant also contends the trial court erred by "admitting as substantive evidence" the video tape of Rockwell-Flick's interview with the child. This argument is unfounded.

A video tape is admissible as substantive evidence upon presentation of a proper foundation. N.C.G.S. § 8-97 (1986). Defendant's objection at trial was not to the propriety of the foundation evidence, nor does he assert in this Court an objection to the trial court's determination that the State laid a proper foundation for introduction of the video tape. Rather defendant's argument below and to this Court is in essence the identical Confrontation Clause challenge directed at Rockwell-Flick's live hearsay testimony. Having resolved that issue against defendant, we hold the videotaped version of the same information was likewise admissible.

## IV.

**[6]** Defendant next attacks the trial court's admission of Rockwell-Flick's "opinion" testimony "that the boy 'illustrated' to her 'fellatio,'

and 'anal intercourse,' " contending "[t]here was no showing by the prosecution that [it] was helpful to the jury." This argument is without merit.

Rockwell-Flick testified that when she asked the child what defendant did to him, the child took the adult male anatomically correct doll and placed its penis in the mouth of the child doll. The child also put the penis of the adult male doll to the rectum of the child doll. Following these descriptions of the child's actions was Rockwell-Flick's "opinion" testimony to which defendant assigns error.

An expert may give opinion testimony which is based upon her "scientific, technical or other specialized knowledge," if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." N.C.R. Evid. 702 (Rule 702). Assuming *arguendo* that Rockwell-Flick's testimony, characterizing what the child related to her as "illustrating" oral and anal intercourse, was tendered in her capacity as a child sex abuse expert, such testimony simply related her opinion, based upon her specialized expert knowledge, as to what the child had demonstrated by his manipulations of the anatomically correct dolls. Such testimony was without question helpful to the jury on the issue of whether defendant had committed fellatio or anal intercourse upon the child, and admission thereof into evidence was not violative of Rule 702.

In addition, under N.C.R. Evid. 701 (Rule 701), a lay witness may proffer an opinion if "rationally based on the perception of the witness and . . . helpful to a clear understanding of his testimony or the determination of a fact in issue." Further, "[n]othing in the rule would bar evidence that is commonly referred to as a 'short-hand statement of fact.' " N.C.R. Evid. 701 Commentary (quoting 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 125, at 476 (2d rev. ed. 1982)). That is,

   a witness may state the 'instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time.

*State v. Spaulding,* 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), *death sentence vacated,* 428 U.S. 904, 49 L. Ed. 2d 1210 (1976) (quoting *State v. Skeen,* 182 N.C. 844, 845, 109 S.E.2d 71, 72 (1921)).

A contextual reading of Rockwell-Flick's testimony that the child "illustrated" to her "fellatio" and "anal intercourse" indicates it represented her non-expert instantaneous conclusion, based upon her perception of the child's appearance, condition and actions, and thus constituted a "short-hand statement of fact." *See State v. Eason,* 336 N.C. 730, 747, 445 S.E.2d 917, 927 (1994), *cert. denied,* 513 U.S. 1096, 130 L. Ed. 2d 661 (1995) (comment of witness that "he was enjoying what he was doing" a "shorthand statement of fact"); *State v. Marlow,* 334 N.C. 273, 285, 432 S.E.2d 275, 282 (1993) (testimony of witness that another "couldn't believe it" admissible as shorthand statement of fact). Rockwell-Flick's conclusion thus was "an inference or opinion rationally based on the perception of the witness and helpful to a clear understanding of [her] testimony," and therefore admissible under Rule 701. *Id.*

V.

[7] In addition, defendant maintains it was error to allow Sekulich to testify as to her opinion that the child was "not telling everything." We perceive no prejudicial error therein.

On cross examination, Sekulich was asked whether she wrote down information obtained from the child during their interview. She responded, "I typed up a report, yes." Defendant then posed specific questions regarding the content of the report. On redirect, the State requested that Sekulich read into evidence the entire report, including the phrase, "[social worker] feels [the child] is not telling everything."

N.C.R. Evid. 106 (Rule 106) provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Assuming *arguendo* the challenged evidence was not admissible under Rule 106, any such error was not prejudicial. Under N.C.G.S. § 15A-1443(a) (1997), a defendant must show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at . . . trial." Weighed against the substantive evidence against defendant, admission of the social worker's brief, vague and imprecise hearsay opinion created no "reasonable

possibility" the jury verdict would have been different had this portion of Sekulich's report been excluded.

## VI.

[8] Defendant also alleges the trial court erred by declining to instruct the jury on the *actus reus* supporting each criminal charge. Defendant asserts violation of multiple federal and state constitutional rights in support of his argument. However, our careful review of the transcript reveals defendant raised no constitutional argument regarding this issue at trial. Because this Court may not consider constitutional questions that were not raised and decided at trial, we decline to address this assignment of error. *See State v. Houston*, 122 N.C. App. 648, 649, 471 S.E.2d 127, 127 (1996); *see also State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) ("where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]' ") (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).

## VII.

[9] Defendant further argues the trial court erred by failing to find as a mitigating factor that,

> [p]rior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer.

N.C.G.S. § 15A-1340.4(a)(2)(l) (1988). Defendant cites his inculpatory statement to Detective Smith as an acknowledgment of wrongdoing. However, because defendant repudiated this statement by moving to suppress it at trial, he may not later rely upon his confession as evidence of the mitigating factor of voluntarily acknowledging wrongdoing. *State v. Smith*, 321 N.C. 290, 292, 362 S.E.2d 159, 160 (1987). Therefore, the trial court's failure to find the mitigating factor set out in G.S. § 15A-1340.4(a)(2)(1) was not error.

## VIII.

[10] Finally, defendant contests the trial court's denial of his motion to dismiss, arguing there was "insubstantial evidence" to support the jury verdict. Viewing the evidence in the light most favorable to the State, *State v. Mason*, 336 N.C. 595, 597, 444 S.E.2d 169, 169 (1994), our examination of the record reveals substantial evidence of each element of the crimes charged and that defendant was the perpetra-

**STATE v. WADDELL**

[130 N.C. App. 488 (1998)]

tor. *See State v. Roddey,* 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Accordingly, the trial court did not err in denying defendant's motion to dismiss.

No error.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

After the trial court declared (outside of the presence of the jury) the child to be incompetent to testify in the trial, the defendant requested that the jury be informed of the finding. The trial court denied the request and I agree with the defendant that this was error requiring a new trial.[1] I accordingly dissent.

The jury was called upon in this case to determine the truth and reliability of the child's statements put before them in the form of hearsay testimony of adult witnesses. The defendant was entitled to present to the jury any relevant evidence affecting the credibility of the child. *See Giglio v. United States,* 405 U.S. 150, 150-154, 31 L. Ed. 2d 104, 106-09 (1972). The declaration by the trial court that the child was not competent to testify in the trial is relevant evidence on the credibility of the child. *See State v. Rogers,* 109 N.C. App. 491, 498, 428 S.E.2d 220, 224 (child's inability to testify at trial is relevant to whether an earlier hearsay statement was trustworthy), *cert. denied,* 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied,* 511 U.S. 1008, 128 L. Ed. 2d 54 (1994). The trial court therefore erred in rejecting the defendant's request to inform the jury that it had declared the child to be incompetent to testify.

On this basis, I would award the defendant a new trial.

---

1. Contrary to the majority, I believe that the defendant has cited authority in his brief in support of this argument.