STATE OF NORTH CAROLINA v. ROBERT ANTHONY McNEILL

No. COA99-1172

(Filed 7 November 2000)

**1. Evidence— witness refusing to testify—prior testimony—admission under hearsay exception**

The trial court did not err in a prosecution for two counts of first-degree murder, one count of armed robbery, and one count of conspiracy to commit armed robbery by admitting the prior testimony of defendant's brother under N.C.G.S. § 8C-1, Rule 804(b)(5) where the brother had testified at his own trial that he

STATE v. McNEILL

[140 N.C. App. 450 (2000)]

had not committed these crimes but refused to testify at defendant's trial. The trial court's findings of fact and conclusions of law were supported by evidence that the brother had personal knowledge of the underlying events, that his prior testimony was material and (in light of his refusal to testify at defendant's trial) more probative than any evidence the State could procure through reasonable efforts, and that the brother's testimony possessed equivalent circumstantial guarantees of trustworthiness.

2. **Constitutional Law— confrontation clause—witness refusing to testify—prior testimony**

The introduction of prior trial testimony from defendant's brother who refused to testify in the present trial did not violate the confrontation clauses of either the state or federal constitutions.

3. **Appeal and Error— preservation of issues—plain error not alleged—no authority cited**

An argument by a murder, robbery, and conspiracy defendant that the immunity offered to a State's witness was a bribe of a public official was not considered where defendant failed to preserve review of the issue through ordinary channels, waived plain error review by failing to allege plain error in his assignment of error, and cited no authority to support his contention in his brief.

4. **Constitutional Law— self-incrimination—prior testimony voluntarily given**

The trial court did not err in a prosecution for first-degree murder, armed robbery, and conspiracy to commit armed robbery by allowing the State to introduce testimony defendant had given during his brother's trial arising from the same events. During that testimony, defendant exercised his Fifth Amendment privilege and refused to answer many questions, but specifically stated under oath that his brother did not shoot or kill either of the victims. The privilege against self-incrimination furnishes no protection against the use of testimony which was voluntarily given.

5. **Criminal Law— circumstantial evidence—sufficient**

The trial court did not err by not allowing defendant's motion to dismiss charges of first-degree murder, armed robbery, and conspiracy to commit armed robbery. The contention that cir-

cumstantial evidence must exclude to a moral certainty every other reasonable hypothesis has been consistently rejected.

**6. Search and Seizure— probable cause—evidence sufficient**

The trial court did not err in a prosecution for first-degree murder, armed robbery, and conspiracy to commit armed robbery by denying defendant's motion to suppress items seized from his home. The affidavit provided to the magistrate issuing the warrant reveals that the affiant specifically listed details told him by an unnamed "concerned citizen" and employee of the company which was robbed; the details were specific; and these details were not public knowledge. The magistrate had a substantial basis for concluding that probable cause existed to issue the warrant.

Appeal by defendant from judgments entered 18 October 1996 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 13 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*John T. Hall for defendant-appellant.*

HUNTER, Judge.

Robert Anthony McNeill ("defendant") appeals the jury verdict convicting him of two counts of murder in the first degree, one count of robbery with a dangerous weapon, and one count of conspiracy to commit armed robbery. We find no error.

The pertinent facts reflected in the record are these: In May 1993, while defendant was working as a grocery manager for Food Lion grocers ("Food Lion"), he approached a co-worker, Craig Stover ("Stover") "about how easy it would be for them to rob the Tower Food Lion . . . ." In the process of devising a plan, defendant told Stover to get a gun. Defendant further suggested that in the course of the robbery they kill a particular manager that defendant disliked, but Stover did not want to kill anyone. On 16 May 1993, defendant and Stover decided to implement their plan. Just after the store closed to the public, while defendant and the store's assistant manager conducted the day's-end accounting, Stover arrived at a back door—which was to be left unlocked by defendant—dressed in disguise. Stover then put a gun to defendant's head, ordered defendant and the

STATE v. McNEILL

[140 N.C. App. 450 (2000)]

other manager to the back of the store and locked them both in a tractor trailer that was pulled up to the loading dock. Stover then took defendant's keys and left the store with approximately $11,000.00, driving away in defendant's new truck. Although defendant spoke to the contrary, the record reflects that in the days and weeks following the robbery, defendant's behavior did not comport with that of someone who was terrified at having been robbed— in fact, defendant laughed and giggled about it. Furthermore, defendant was known to be spending large sums of money just after the robbery.

On 18 September 1993, defendant's brother, Elmer Ray McNeill ("Ray") went to South Carolina to pick up a friend ("Thornhill") whom he had asked to obtain a gun. Thornhill bought a Ruger Blackhawk .357 magnum from Zane Bryant ("Bryant") and gave it to Ray. On the night of 19 September 1993, Ray met with defendant and gave defendant the gun. Later that night, Food Lion at Six Forks was robbed and two managers were murdered, execution style. The store showed no sign of forced entry and there were no signs of a struggle with the victims. However both defendant's and Ray's fingerprints were found at the crime scene next to those of one of the victims. Additionally, bullet fragments recovered from the victims' bodies matched both the gun type and the ammunition loaded in the gun which Bryant sold to Thornhill for Ray. Furthermore, there were four small metal parts found at the crime scene next to the body of one of the victims. Those four parts were found to be the ejector rod, ejector housing, spring, and ejector rod screw from a Ruger Blackhawk revolver. At trial, Bryant testified that the gun he sold Thornhill had an "ejector screw [that] would never tighten up properly."

At Ray's trial, defendant testified that Ray was innocent and that he did not commit any of the crimes for which he was being tried. After defendant testified, Ray "voluntarily called himself to the witness stand to testify . . . and denied that he committed the crimes for which he was charged . . . ." However, at defendant's trial, when called to the stand, Ray refused to testify. The trial court therefore allowed the State to admit statements made by Ray, under oath at his own trial, into evidence at defendant's trial.

[1] In the record we see defendant preserved twenty-six assignments of error; however, he argues only seven. Thus we deem those not argued to be abandoned. N.C.R. App. P. 28(b)(5). Defendant first assigns error to the trial court's admitting Ray's prior testimony and

statements into evidence in violation of N.C. Gen. Stat. § 8C-1, Rule 804(b)(5). Defendant argues that the statements were inadmissible because the trial court's findings of fact and conclusions of law were not supported by the evidence to show that there were "equivalent circumstantial guarantees of trustworthiness . . . ." N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (1999). We disagree.

We begin by agreeing with the State that although defendant argues there are "four different *statement clusters that fall under this* challenge," the record reveals that the trial court admitted only one of these "clusters" pursuant to this rule, specifically Ray's prior testimony. Therefore, we address only defendant's contention that Ray's prior trial testimony was statutorily inadmissible under hearsay exception Rule 804(b)(5).

Under North Carolina law, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (1999). Although hearsay is generally not admissible, there are any number of exceptions to the hearsay rule. *See* N.C. Gen. Stat. § 8C-1, Rule 802-804. Accordingly, one such exception is listed for when a declarant is unavailable, the pertinent sub-section allows a trial court to admit hearsay statements when a declarant *"[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so . . . ."* N.C. Gen. Stat. § 8C-1, Rule 804(a)(2) (1999) (emphasis added).

In the case at bar, it is not disputed that Ray's prior testimony, offered in defendant's trial "to prove the truth of the matter asserted," is hearsay. N.C. Gen. Stat. § 8C-1, Rule 801(c). However, the record before this Court reflects that after Ray testified under oath at his own trial, he refused to testify at defendant's trial. Yet, defendant argues that the trial court's inquiry to determine Ray's unavailability was inadequate. Defendant further argues "[t]he trial court determined that the Fifth Amendment privilege invoked by . . . Ray was appropriate . . . ." However, we find the record to reflect the very opposite.

The record reveals the trial court found that, having testified at his own trial, Ray:

> 5. . . . *[K]nowingly waived any privilege against self-incrimination which may have existed* prior to the time of his

STATE v. McNEILL

[140 N.C. App. 450 (2000)]

testimony. That privilege having been waived, either side may call him as a witness in [the present defendant's trial court] proceedings. *[Ray] has no right to refuse to testify or to refuse to answer questions under oath concerning these matters.*

. . .

7. The Court having so ruled that the privilege no longer exists, and the State having in fact called Ray McNeill as a witness, and *[Ray] having been ordered by the court to testify and having willfully refused to testify* and refused to take the oath and refused to answer any questions, the Court finds and concludes that such refusal was without any right in law and that *such willful refusal renders the witness Ray McNeill unavailable as a matter of fact and as a matter of law.* . . .

(Emphasis added.) Defendant offers no proof for his insistence that the trial court only found Ray unavailable due to his assertion of the privilege. Neither does defendant offer this Court any authority upon which we should overturn the trial court's ruling due to an abuse of discretion with regard to its finding that Ray was unavailable. Thus, we hold the record supports the trial court's findings of fact and conclusions of law that Ray was, in fact, unavailable as required under Rule 804(a)(2).

However, having held that Ray was unavailable to testify at defendant's trial, we must still consider other factors to determine if Ray's prior trial testimony offered by the State was properly allowed. N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) reads:

(b) *Hearsay exceptions.*—The following [offered testimony is] not excluded by the hearsay rule *if the declarant is unavailable as a witness:*

. . .

(5) *Other Exceptions.*—A statement not specifically covered by any of the foregoing exceptions but *having equivalent circumstantial guarantees of trustworthiness*, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the [State] can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admis-

> sion of the statement into evidence. However, a state-
> ment may not be admitted under this exception unless
> the [State] gives written notice stating [its] intention to
> offer the statement and the particulars of it . . . to the
> [defendant] sufficiently in advance of offering the state-
> ment to provide the [defendant] with a fair opportunity to
> prepare to meet the statement.

N.C. Gen. Stat. § 8C-1, Rule 804(b)(5) (emphasis added). (The State does not contend as to whether the offered testimony is specifically covered by another hearsay exception. Thus, that issue is not before us.)

In *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985), our Supreme Court outlined six specific questions and their explanation pursuant to Rule 803(24) (now codified as Rule 804(b)(5)) which a trial court must answer in its determination of whether to admit hearsay testimony. They are:

> [1] Has proper notice been given?

> [Where the] testimony is sought to be admitted as substantive evidence under Rule 803(24), the proponent must first provide written notice to the adverse party . . . .

> . . .

> [2] Is the hearsay not specifically covered elsewhere?

> If the trial judge determines that the statement is covered by one of the other specific exceptions, that exception, not . . . [this one] governs . . . and the inquiry must end. . . .

> **[3] Is the statement trustworthy?**

This threshold determination has been called "the most significant requirement" of admissibility under [this exception]. . . . Among the[] factors [to be considered] are (1) assurance of personal knowledge of the declarant of the underlying event . . . ; (2) the declarant's motivation to speak the truth or otherwise . . . ; (3) whether the declarant ever recanted the testimony . . . ; and (4) the practical availability of the declarant at trial for meaningful cross-examination. . . .

> None of these factors, alone or in combination, may conclusively establish or discount the statement's "circumstantial guarantees of trustworthiness." The trial judge should focus upon the

factors that bear on the declarant at the time of making the out-of-court statement and should keep in mind that the peculiar factual context within which the statement was made will determine its trustworthiness.

. . .

### [4]  Is the statement material?

[The statement must be] ". . . offered as evidence of a material fact." [N.C. Gen. Stat. § 8C-1, Rules 401 and 402.] . . .

### [5]  Is the statement more probative on the issue than any other evidence which the proponent can procure through reasonable efforts?

The requirement [of necessity] imposes the obligation of a dual inquiry: were the proponent's efforts to procure more probative evidence diligent, and is the statement more probative on the point than other evidence that the proponent could reasonably procure? . . .

. . .

### [6]  Will the interests of justice be best served by admission?

[As] set out in N.C.G.S. § 8C-1, Rule 102, [the general purpose of the Evidence Code is] . . . to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

*Id.* at 92-96, 337 S.E.2d at 844-47 (emphasis added) (footnotes omitted). However, in his brief to this Court, defendant takes issue only with questions 3 through 6 (emphasized above), thus those are the only issues we will address.

The record reveals that the trial court, in determining whether Ray's proffered testimony possessed equivalent circumstantial guarantees of trustworthiness, found Ray:

9. . . . [H]as actual knowledge of the events about which he testified, and that this evidence is more probative than any other evidence which the State can produce through reasonable efforts. [Furthermore,] [t]he Court also finds and concludes that the general purposes of the Rules of Evidence and the interest of

justice [are] best . . . served by the admission of this testimony into evidence.

10. . . . [Ray's] testimony was given under oath in a court of law and subjected to direct and cross examination. The testimony is materially consistent with [his] prior statements . . . . This testimony of Ray is also consistent with [that] of [defendant] at Ray's trial. . . .

11. The Court finds . . . that these two men had a close relationship as brothers and that Ray would not likely have incriminated his brother in his testimony unless the testimony was, in fact, true. . . .

12. . . . [Defendant's] testimony at Ray's trial shows that he was specifically asked about his own conduct on the evening of the murders and . . . [defendant] refused to answer and gave as a basis for such refusal that the answer would tend to incriminate him. . . . [T]he Court specifically finds that this defendant asserted his Fifth Amendment privilege in Ray's trial in good faith and that the answers to the questions posed to the defendant at that time which he refused to answer would have tended to incriminate him. . . . [W]here one has voluntarily chosen to testify as a witness for a co-defendant and has used this Fifth Amendment claim in that co-defendant's trial as a "sword" for the co-defendant's defense, to create an impression in the minds of the co-defendant's jury that the co-defendant on trial is innocent and that the witness claiming the Fifth Amendment privilege is in fact the perpetrator, then the Court can consider the totality of this conduct as a circumstantial guarantee of trustworthiness of the testimony of the co-defendant on trial, which testimony the witness claiming the Fifth Amendment privilege has sought to support, re-enforce, and bolster.

It is undisputed by defendant that Ray purchased the gun at issue. The State presented evidence at trial that the only parties privy to the robbery and murders were the victims (both dead), defendant, and Ray—although their brother, Michael McNeill, testified of things each brother had told him, the stories conflicted. Therefore, we hold that the trial court's findings of fact and conclusions of law were supported by the evidence that Ray had personal knowledge of the underlying events, that his prior testimony was material and (in light of his refusal to testify at defendant's trial) more probative than any evidence the State could procure through reasonable efforts, and that

Ray's testimony possessed equivalent circumstantial guarantees of trustworthiness.

Further, the record reflects that Ray never deviated from claiming that he was innocent. From the time he was arrested and spoke to the police, to the time of his trial, Ray consistently stated he did not commit the robbery or murders. In fact, we agree with the trial court that defendant's voluntarily testifying at Ray's trial—during which defendant stated " 'Ray knows who beat him up and took the gun that night. He has sat there thirty months keeping his mouth shut for some reason; stupidity maybe, loyalty another[,]' "—"support[ed], re-enforce[d], and bolster[ed]" Ray's testimony that he was innocent. We again hold that the evidence supports the trial court's conclusion that Ray was motivated to speak the truth and that he had never recanted his claim of innocence. Defendant's only showing that Ray may not have been telling the truth was based on the fact that Ray's testimony conflicted with that of their brother, Michael. We find defendant's argument one of credibility going against Michael's testimony, and not Ray's prior trial testimony which was "given under oath in a court of law and subjected to direct and cross examination." Thus, we find no error in the trial court's admitting Ray's prior trial testimony because it, in fact, served the interests of justice.

[2] Defendant's second assignment of error is that the trial court's allowance of Ray's prior trial testimony violated defendant's state and federal constitutional rights to confrontation and cross-examination. We find defendant's argument meritless.

In his brief to this Court, defendant admits:

"The Confrontation Clauses in the Sixth Amendment to the United States Constitution and Article I Section 23 of the North Carolina Constitution prohibit the State from introducing hearsay evidence in a criminal trial UNLESS the State: (1) demonstrates the necessity for using such testimony, and (2) establishes 'the inherent trustworthiness of the original declaration.' "

(Emphasis added) (quoting State v. Waddell, 130 N.C. App. 488, 494, 504 S.E.2d 84, 88 (1998).) Having already addressed the trustworthiness of Ray's statement and the fact that the testimony was more probative than any other evidence which the State could produce through reasonable efforts, we hold that the trial court's admittance of the testimony did not violate the Confrontation Clauses of either our state or federal constitutions, and thus, did not violate any of

defendant's constitutional rights. *See State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998).

**[3]** Defendant's third assignment of error is that the trial court committed plain error, in violation of defendant's constitutional rights, by allowing Craig Stover to testify while also granting him immunity. It is defendant's position that the immunity offered Mr. Stover was a bribe of a public official by the district attorney.

Defendant admits that he failed to preserve, through ordinary channels, the right to argue this issue. Nonetheless:

> In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(c)(4). However, even a plain error argument must be made an assignment of error in the record, which defendant also failed to do. "[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a). Therefore, defendant has "also waived plain error review by failing to allege in his assignment of error that the trial court committed plain error." *State v. Flippen*, 349 N.C. 264, 274-75, 506 S.E.2d 702, 710 (1998). Furthermore, although defendant makes several arguments in his brief concerning this issue, he cites no authority to support the contention that admittance of testimony of a witness who is offered immunity violates a defendant's constitutional rights. Thus, we refuse to address defendant's argument. N.C.R. App. P. 28(b)(5).

**[4]** Defendant's fourth assignment of error is that the trial court erred by allowing the State to introduce his own testimony made during's Ray's trial. It is defendant's contention that by the trial court's admitting the prior testimony (during which defendant "exercise[d] his Fifth Amendment privilege and refused to answer many questions about his own activities on the date of these homocides . . . [but] specifically stated under oath . . . that Ray did not shoot or kill either of the victims in this case[,]") the State was allowed to unconstitutionally compel him to testify or to "call[] attention to [defendant's] failure to take the stand and testify at [his own] trial." We disagree.

Defendant is correct in that it has long been held by our Supreme Court that the privilege against self-incrimination is one against being compelled to testify. It furnishes no protection against the use of testimony which was voluntarily given. *State v. Farrell*, 223 N.C. 804, 807, 28 S.E.2d 560, 563 (1944) (citations omitted) ("[t]he constitutional inhibition against compulsory self-incrimination . . . is directed against compulsion, and not against voluntary admissions, confessions, or testimony freely given on the trial. Such statements, confessions, and testimony voluntarily given on a former trial are received against the accused as his admissions"). The record before us clearly reflects that the trial court found,

> [a]gainst the advice of his lawyers who were present and with whom he had consulted, and after being advised by the Court that he did not have to testify and that he could refuse to answer any question that would tend to incriminate him, [defendant] *freely and voluntarily chose to take the witness stand and testify on behalf of Ray.*

(Emphasis added.) At no time before, nor does defendant now object to the trial court's findings that he voluntarily testified at the trial of his brother, Ray. Case law is clear, that where a defendant fails to object to the trial court's findings, "the findings of fact are deemed to be supported by the evidence and are conclusive upon appeal." *State v. Davis*, 46 N.C. App. 778, 780, 266 S.E.2d 20, 22 (1980). Therefore, we hold that defendant's prior testimony from Ray's trial was freely and voluntarily given and defendant's Fifth Amendment privilege against self-incrimination does not apply to that "voluntarily given" testimony. Defendant's argument is overruled.

**[5]** Defendant's fifth assignment of error is that the trial court erred by not allowing his motion to dismiss for lack of evidence. Defendant's only support for his contention that the evidence was insufficient is that "[i]n the present case, only the improperly admitted hearsay statements of [] Ray [] provide any direct evidence that the defendant was present or otherwise participated in the crimes." We disagree.

We reject defendant's assertion that "circumstantial evidence must exclude to a moral certainty every other reasonable hypothesis[,]" and thus the evidence is insufficient to justify his conviction. *State v. Madden*, 212 N.C. 56, 58, 192 S.E. 859, 860 (1937). From as far back as 1956, our Supreme Court has consistently rejected that line

of reasoning, holding that even in cases where the evidence is completely circumstantial:

> "If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." [*State v. Simmons*, 240 N.C. 780, 785, 83 S.E.2d 904, 908 (1954) (quoting *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731 (1930).] . . . [Therefore,] there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. *To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. . . .*

*State v. Stephens*, 244 N.C. 380, 383-84, 93 S.E.2d 431, 433-34 (1956) (emphasis added).

A review of the record reveals much more evidence admitted at trial (including Michael's testimony and Stover's testimony)· than that to which defendant takes issue. Since defendant does not argue that any element was missing from the State's *prima facie* case, and having already held that Ray's statements were trustworthy and properly admitted; we hold that, in the light most favorable to the State, there was substantial evidence (be it circumstantial or direct) of every element of the crimes charged and that defendant committed the crimes. *State v. Bruce*, 315 N.C. 273, 337 S.E.2d 510 (1985). Thus we are unpersuaded by defendant's argument.

[6] Defendant next assigns error to the trial court's denial of his motion to suppress items seized from his home and truck. It seems defendant's substantive argument is that the applications for the search warrants of his vehicles and home failed to provide sufficient probable case for issuance of the warrants. Specifically, defendant argues that the affidavits were insufficient because "there [wa]s no information to indicate the reliability of the informant." Thus, the warrants were issued in violation of his constitutional right against unreasonable searches and seizures. We are unpersuaded.

Since the State did not introduce any evidence seized from any of defendant's vehicles, we need only address defendant's contention

with respect to items seized from his home, specifically the bag of washed clothes found wet in defendant's garage rafters.

In *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 257-58 (1984), our Supreme Court plainly adopted the totality of the circumstances test enunciated in *Illinois v. Gates*, for determining whether probable cause exists for the issuance of a search warrant. (*See Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548 (1983), overruling and abandoning the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723 (1964); and *Spinelli v. U.S.*, 393 U.S. 410, 21 L. Ed. 2d 637 (1969)).

> The question under the totality test is whether the issuing magistrate, given the totality of the circumstances as set forth in the affidavit before him, including the veracity and basis for knowledge of persons supplying hearsay information, had a substantial basis for concluding that probable cause existed. *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58.

Our review of the affidavit provided to the issuing magistrate reveals that the affiant, among other things, specifically listed for both robberies and the murders, details told him about the crimes by an unnamed "concerned citizen" and a Food Lion employee. The details listed were specific, "includ[ing] the number of people present during the robbery, the weapon used, where the alleged victims were left, where the get away vehicle was left and the items actually taken from the Food Lion Store." Furthermore, the affiant stated, "[t]hese details were not public knowledge and could only have been known by those persons actually involved or law enforcement officers." Thus, we hold that the magistrate had a substantial basis for concluding probable cause existed to issue the warrants.

Finally, defendant argues vaguely that the trial court committed prejudicial error against him by its entering judgments and by committing other errors throughout the trial. Because defendant's arguments have already been addressed in his other assignments of error, we need not address them here.

We find the trial court committed

No error.

Judges LEWIS and WALKER concur.