IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-12

No. 270PA20

Filed 11 February 2022

STATE OF NORTH CAROLINA

v.

DATORIUS LANE MCLYMORE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, No. COA19-428, 2020 WL 2130670 (N.C. Ct. App. May 5, 2020) (unpublished), finding no error in a judgment entered on 26 July 2018 by Judge Claire V. Hill in Superior Court, Cumberland County. Heard in the Supreme Court on 1 September 2021.

*Joshua H. Stein, Attorney General, by Marc X. Sneed, Special Deputy Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Sterling Rozear, Assistant Appellate Defender, for defendant-appellant.*

EARLS, Justice.

¶ 1    This case requires us to decide whether the trial court committed reversible error in instructing the jury that the defendant, Datorius Lane McLymore, could not claim self-defense to justify his use of deadly force because he was also in violation of N.C.G.S. § 14-415.1, which makes it a Class G felony for an individual with a prior felony conviction to possess a firearm. In answering this question, we must interpret

the scope and meaning of certain provisions of North Carolina's "Stand Your Ground" Law. Specifically, we must interpret a provision which states in relevant part that a defendant may not claim self-defense if he or she "used defensive force and . . . [w]as attempting to commit, committing, or escaping after the commission of a felony." N.C.G.S. § 14-51.4 (2021). We conclude that this provision requires the State to prove an immediate causal nexus between a defendant's attempt to commit, commission of, or escape after the commission of a felony and the circumstances giving rise to the defendant's perceived need to use force.

¶ 2        Because it failed to instruct the jury on this causal nexus requirement, the trial court's jury instructions were erroneous. Further, although McLymore admitted that he had previously been convicted of a felony offense and was possessing a firearm at the time he used deadly force, the trial court's failure to properly instruct the jury denied him the opportunity to dispute the existence of a causal nexus between his violation of N.C.G.S. § 14-415.1 and his use of force and to assert any affirmative defenses. Because we do not interpret N.C.G.S. § 14-51.4(1) to categorically prohibit individuals with a prior felony conviction from ever using a firearm in self-defense, we cannot say that the trial court's failure to instruct on the causal nexus requirement was not prejudicial with respect to McLymore's purported violation of N.C.G.S. § 14-415.1.

¶ 3        However, at trial, McLymore was also convicted of another felony offense,

robbery with a dangerous weapon. This outcome and the uncontroverted facts conclusively establish that McLymore's commission of robbery with a dangerous weapon immediately followed the confrontation during which he used deadly force. Under these circumstances, McLymore could not have been prejudiced by the trial court's issuance of the erroneous jury instruction because, based on the jury's verdict, the immediate causal nexus between his use of force and his commission of the disqualifying felony of robbery with a dangerous weapon was established. Thus, under N.C.G.S. § 14-51.4(1), he was disqualified from claiming the justification of self-defense. Accordingly, we modify and affirm the decision of the Court of Appeals.

## I.    Background.

¶ 4        In April 2014, McLymore was working as a door-to-door magazine salesman. After completing a sale, he used the proceeds to purchase laundry detergent and food. Shortly thereafter, he quit his job with the sales company. Later that day, his supervisor at the sales company, David Washington, met McLymore at a local hotel. The two left together in Washington's vehicle. When Washington asked McLymore about the proceeds from his magazine sale, McLymore responded that he "spent it on food and washing powder." According to McLymore, while the vehicle was stopped at a traffic light, Washington punched McLymore in his jaw, grabbed him by the shirt, and pushed him against the door. In response, McLymore pulled out a gun, "closed [his] eyes[,] and fired two" shots at Washington, killing him. McLymore then pulled

Washington's body out of the driver's seat, left it on the ground, and fled the scene in Washington's vehicle. McLymore evaded police for over an hour before being apprehended.

On 5 January 2015, McLymore was indicted for the first-degree murder of Washington, felonious speeding to elude arrest, and robbery with a dangerous weapon for taking Washington's vehicle. At trial, McLymore admitted that he had previously been convicted of multiple felony offenses including common law robbery, larceny of a firearm, and assault inflicting serious bodily injury. The trial court also admitted evidence that twenty days before McLymore shot Washington, McLymore was involved in another alleged robbery, during which he entered the victim's house, fought with the victim over money, and then took the victim's gun and shot him. The State presented evidence that McLymore used this same gun to shoot Washington.

At trial, McLymore did not dispute that he killed Washington. Instead, he claimed that he justifiably used deadly force in self-defense. During the charge conference, the trial court explained that it would instruct the jury on self-defense but that "it is disqualifying for self-defense under *State [v.] Crump* that he was a felon in possession of a firearm, which is a disqualifying felony [under N.C.G.S. § 14-51.4(1)]." McLymore objected, arguing that N.C.G.S. § 14-51.4(1) did not apply because he was claiming perfect self-defense under the common law, and that even if N.C.G.S. § 14-51.4(1) did apply, it would violate his rights to interpret this provision

to categorically bar individuals with prior felony convictions from ever using a firearm in self-defense. The trial court overruled his objection and instructed the jury, in relevant part, that

> [t]he Defendant is not entitled to the benefit of self-defense if he was committing the felony of possession of a firearm by a felon. . . . [T]he State must prove beyond a reasonable doubt, among other things, that the Defendant did not act in self-defense, or that the Defendant was committing the felony of possession of a firearm by felon if the Defendant did act in self-defense.

The jury found McLymore guilty of all charged offenses. He was sentenced to life without the possibility of parole.

¶ 7     On appeal, the Court of Appeals rejected McLymore's argument that N.C.G.S. § 14-51.4 "only applies to statutory self-defense" as created by N.C.G.S. § 14-51.3 and not "common law self-defense," which McLymore attempted to invoke at trial.[1] *State v. McLymore*, No. COA19-428, 2020 WL 2130670, at \*6 (N.C. Ct. App. May 5, 2020) (unpublished). According to the Court of Appeals, while another provision of the statutory law of self-defense expressly provided that it was "not intended to repeal or limit any other defense that may exist under the common law," the General Assembly chose not to "carve out a [ ] common law exception" to sections 14-51.3 and 14-51.4.

---

[1] The Court of Appeals also held that the trial court did not plainly err when it admitted evidence relating to the earlier incident when McLymore allegedly shot a man during a robbery. *State v. McLymore*, No. COA19-428, 2020 WL 2130670, at \*6 (N.C. Ct. App. May 5, 2020) (unpublished). This issue, however, is not before this Court.

*Id.* at *7. Therefore, the Court of Appeals concluded that sections 14-51.3 and 14-51.4

wholly "supplant[ ]" the common law of self-defense

> in situations where (1) the defendant "was attempting to
> commit, committing, or escaping after the commission of a
> felony"; (2) the defendant "[i]nitially provokes the use of
> force against himself or herself" unless he or she was "in
> imminent danger of death or serious bodily harm"; or (3)
> "the person who was provoked continues or resumes the
> use of force" after the defendant withdraws.

*Id.* (alteration in original) (quoting N.C.G.S. § 14-51.4 (2019)). Applying the precedent

it had established in *State v. Crump*, 259 N.C. App. 144 (2018), in which the Court of

Appeals held that N.C.G.S. § 14-51.4(1) only required proof that a defendant was

committing a felony at the time he or she used assertedly defensive force, the Court

of Appeals concluded that McLymore was not entitled to invoke the statutory right to

self-defense because "when [McLymore] shot Washington, he was committing the

offense of possession of a firearm by a felon which is punishable as a Class G felony

under N.C.[G.S. §] 14-415.1." *McLymore*, 2020 WL 2130670, at *7.

¶ 8        This Court allowed McLymore's petition for discretionary review.

## II.    Sections 14-51.3 and 14-51.4 supplant the common law of self-defense.

¶ 9        McLymore first argues that the Court of Appeals erred in concluding that

N.C.G.S. § 14-51.4(1) applies in his case. McLymore contends that he invoked the

*common law* right to self-defense, which he argues continues to exist separate and

apart from the *statutory* right to self-defense created by N.C.G.S. § 14-51.3. Thus, in

McLymore's view, even if N.C.G.S. § 14-51.4(1) bars him from invoking the statutory right to self-defense, it does not disqualify him from justifying the use of defensive force by invoking what he asserts is his still-existing common law right to self-defense. In response, the State contends that the General Assembly has exercised its authority to displace the common law through statutory enactment and that once the General Assembly chose to codify the right to self-defense, the common law right to self-defense was entirely extinguished.

¶ 10        No one disputes that the General Assembly possesses the authority to displace the common law through legislative action. As we have previously explained, "the General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter." *McMichael v. Proctor*, 243 N.C. 479, 483 (1956). Instead, the question is whether the General Assembly intended to add to the common law right to perfect self-defense or abrogate it in its entirety.

¶ 11        Although not expressly stated, the General Assembly's intention to abolish the common law right to perfect self-defense is unmistakable. Our caselaw describes the common law of perfect self-defense as follows:

> The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:

        (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

        (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

        (3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

        (4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Norris*, 303 N.C. 526, 530 (1981). Section 14-51.3 closely tracks this earlier common law definition of the right to self-defense in providing that an individual may use force "against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force." N.C.G.S. § 14-51.3(a) (2021). Further, as the Court of Appeals correctly explained, section 14-51.3 notably lacks a "carve out" explicitly conveying the General Assembly's intention to preserve the common law. *McLymore*, 2020 WL 2130670, at *7. Together, these facts indicate that the General Assembly meant to replace the existing common law right to perfect self-defense with a new statutory right.

¶ 12      Accordingly, we conclude that after the General Assembly's enactment of N.C.G.S. § 14-51.3, there is only one way a criminal defendant can claim perfect self-

defense: by invoking the statutory right to perfect self-defense. Section 14-51.3 supplants the common law on all aspects of the law of self-defense addressed by its provisions.[2] Section 14-51.4 applies to "[t]he justification described in . . . [N.C.]G.S. [§] 14-51.3." N.C.G.S. § 14-51.4 (2021). Therefore, when a defendant in a criminal case claims perfect self-defense, the applicable provisions of N.C.G.S. § 14-51.3—and, by extension, the disqualifications provided under N.C.G.S. § 14-51.4—govern. Because McLymore claimed perfect self-defense, and the only right to perfect self-defense available in North Carolina was the right provided by statute, the trial court did not err in delivering an instruction on the felony disqualifier contained in N.C.G.S. § 14-51.4(1), which applies under the circumstances of this case.

## III. The trial court erroneously stated the law of self-defense, but this error could not have prejudiced McLymore.

Because we interpret subsection 14-51.4(1) to apply to McLymore's claim of perfect self-defense, we next consider the scope of the felony disqualifier. According to McLymore, the trial court erred in failing to instruct the jury that the State was required to prove an immediate causal nexus between his commission of a felony offense and the circumstances giving rise to his perceived need to use defensive force. In his view, it would be absurd and contrary to the General Assembly's intent to

---

[2] However, to the extent the relevant statutory provisions do not address an aspect of the common law of self-defense, the common law remains intact. *See McMichael v. Proctor*, 243 N.C. 479, 483 (1956) ("So much of the common law as has not been abrogated or repealed by statute is in full force and effect within this State.").

interpret N.C.G.S. § 14-51.4(1) to categorically bar any individual previously convicted of a felony from ever using a firearm in self-defense. In response, the State argues first that McLymore failed to preserve the causal nexus argument and second that N.C.G.S. § 14-51.4(1), by its plain terms, does not require the State to prove anything more than that McLymore was committing a felony offense when he used defensive force. In the alternative, the State argues that even if N.C.G.S. § 14-51.4(1) incorporates a causal nexus requirement, McLymore could not have been prejudiced by the trial court's misstatement of the law of self-defense.

¶ 14     We conclude that McLymore has preserved the causal nexus argument and that N.C.G.S. § 14-51.4(1) does incorporate a causal nexus requirement. The Court of Appeals' decision to the contrary in *State v. Crump*, 259 N.C. App. 144 (2018) and subsequent decisions relying on *Crump's* causal nexus holding are overruled. Accordingly, the trial court committed an instructional error when it misstated the requirements of the felony disqualifier at McLymore's trial. However, for the reasons described below, we agree with the State that McLymore could not have been prejudiced.

**A. McLymore preserved his causal nexus argument.**

¶ 15     At trial, McLymore objected to the trial court's issuance of a jury instruction addressing the requirements of N.C.G.S. § 14-51.4(1). Broadly, he offered two grounds for his objection. First, he asserted that it was inappropriate to *deliver* any instruction

on the felony disqualifier because he was invoking the common law right to self-defense, rather than the statutory right to self-defense. We have already rejected this argument. Second, he asserted that the trial court *misstated* the law of self-defense by instructing the jury that if it found he was violating N.C.G.S. § 14-415.1 when he used force against Washington, he was disqualified from attempting to justify his use of force by claiming self-defense. McLymore's objection to the substance of the trial court's self-defense instruction was sufficient to preserve the causal nexus argument for appellate review.

¶ 16        Rule 10 of the North Carolina Rules of Appellate Procedure contains a "specificity requirement." *State v. Bursell*, 372 N.C. 196, 199 (2019). "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Accordingly, if a party fails to state the grounds for an objection and the grounds are not "apparent from the context," *id.*, a party's objection does not preserve an issue for appellate review. Applying Rule 10, we have held that an issue was unpreserved when the substance of a party's objection at trial was either irreconcilable with or unrelated to the substance of the defendant's argument on appeal. *See, e.g., State v. Fair*, 354 N.C. 131, 152 (2001) (holding that the defendant failed to preserve issue for appellate review because "defendant stated

in no uncertain terms at trial that the evidence proffered was not character evidence, [yet] he now seeks to establish error on appeal by asserting that the evidence was indeed character evidence"); *State v. Jones*, 342 N.C. 523, 535 (1996) (holding that "a general objection to the admission of" certain evidence did not preserve entirely unrelated argument raised on appeal asserting that the "chain of custody of the [evidence] was broken").

¶ 17        Rule 10's specificity requirement serves two purposes. First, the specificity requirement "encourage[s] the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial." *State v. Odom*, 307 N.C. 655, 660 (1983); *see also Bursell*, 372 N.C. at 199 ("The specificity requirement in Rule 10(a)(1) prevents unnecessary retrials by calling possible error to the attention of the trial court so that the presiding judge may take corrective action if it is required."). Second, the specificity requirement helps to "contextualize[ ] the objection for review on appeal, thereby enabling the appellate court to identify and thoroughly consider the specific legal question raised by the objecting party." *Bursell*, 372 N.C. at 199. However, Rule 10 does not bind a party on appeal only to arguments identical to the ones offered in support of an objection at trial. If a party's objection puts the trial court and opposing party on notice as to what action is being challenged and why the challenged action is thought to be erroneous—or if the what

and the why are "apparent from the context," N.C. R. App. P. 10(a)(1)—the specificity requirement has been satisfied.

In this case, the grounds McLymore offered in support of his objection at trial were related to and fairly encompass the causal nexus theory he advances on appeal. McLymore did not fail to "bring [this alleged error] to the trial court's attention." *State v. Wiley*, 355 N.C. 592, 615 (2002). At trial and at every subsequent stage of this proceeding, McLymore has argued that the trial court erred in delivering an instruction on N.C.G.S. § 14-51.4. In the alternative, he has consistently argued that if delivering an instruction on N.C.G.S. § 14-51.4 were appropriate, then the trial court misstated the scope and applicability of the felony disqualifier. This objection put the trial court on notice that McLymore believed (1) that the trial court would err if it delivered an instruction explaining the felony disqualifier in the way it had proposed, and (2) that this instruction was erroneous because it would mean that McLymore, and all individuals with a prior felony conviction, were categorically prohibited from ever using a firearm in self-defense. The trial court was afforded an opportunity to reconsider how it was characterizing N.C.G.S. § 14-51.4, and the State was afforded an opportunity to explain why it believed the trial court's description of the law was accurate.

Further, the trial transcript demonstrates that the connection between McLymore's objection and the existence (or lack thereof) of the causal nexus

requirement was readily "apparent from the context." N.C. R. App. P. 10(a)(1). At trial, in response to McLymore's objection, the State argued that "based on recent case law, the *State v. Crump* [decision], the statutory disqualification would apply since the Defendant was a felon in possession of a firearm at the time of the offense." The trial court then expressly relied on the holding of *Crump* to justify its decision to instruct the jury that "if they find that [McLymore] was committing the felony of possession of a firearm by a felon, then that disqualifies him from the self-defense." These explicit references to *Crump's* holding make clear that the parties and the trial court were all on notice at trial of the argument that N.C.G.S. § 14-51.4(1) incorporates a causal nexus requirement.

¶ 20      Accordingly, the requirements of N.C. R. App. P. 10(a)(1), including the specificity requirement, were met in this case. McLymore preserved the causal nexus argument for appellate review.

**B. Subsection 14-51.4(1) incorporates a causal nexus requirement.**

¶ 21      Having determined that McLymore preserved the causal nexus argument, we next consider whether N.C.G.S. § 14-51.4(1) requires the State to prove an immediate causal nexus between the defendant's commission of a felony offense and the circumstances giving rise to his or her use of force. We conclude that it does.

¶ 22      Section 14-51.4 provides that "[t]he justification described in [N.C.]G.S. [§] 14-51.2 and [N.C.]G.S. [§] 14-51.3 is not available to a person who used defensive force

and who . . . [w]as attempting to commit, committing, or escaping after the commission of a felony." N.C.G.S. § 14-51.4 (2021). Admittedly, the plain language of the statute does not support McLymore's position. However, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *State v. Holloman*, 369 N.C. 615, 628 (2017) (quoting *State v. Barksdale*, 181 N.C. 621, 625 (1921)). A literal interpretation of N.C.G.S. § 14-51.4(1) would produce absurd consequences inconsistent with the General Assembly's "manifest purpose."

¶ 23      Subsection 14-51.4(1) was enacted by the General Assembly in 2011 as part of a statute titled in relevant part "An Act to Provide When a Person May Use Defensive Force." S.L. 2011-268, 2011 N.C. Sess. Laws 1002. Commonly known as the "Stand Your Ground" Law, the Act "restate[d] the law [of self-defense] in some respects and broaden[ed] it in others." John Rubin, *The New Law of Self Defense?*, North Carolina Criminal Law: A UNC School of Government Blog (Aug. 17, 2011), https://nccriminallaw.sog.unc.edu/the-new-law-of-self-defense. Notably, the Act established that an individual who is lawfully in his or her home, motor vehicle, or workplace "does not have a duty to retreat from an intruder," even before using deadly force, under most circumstances. N.C.G.S. §§ 14-51.2(f). Similarly, under most circumstances there is no duty for a person to retreat "in any place he or she has the

lawful right to be." 14-51.3(a) (2021); *see also State v. Coley*, 375 N.C. 156, 161 (2020) ("Under [the Act] a person does not have a duty to retreat but may stand his ground against an intruder."). The overall consequence of the Act was to make self-defense more widely available as a justification for the use of force in North Carolina.

¶ 24      The State contends that a literal interpretation of the felony disqualifier reflects "a sensible broadening of the common-law defensive force concept of fault, with the intended purpose being to limit the protections of the Act to the law-abiding." The State is correct that the common law of self-defense required consideration of a defendant's "fault" when determining if the defendant could justify his or her use of force as self-defense. However, a literal interpretation of the felony disqualifier is fundamentally inconsistent with common law principles.

¶ 25      At common law, a defendant's "fault" was assessed solely by reference to that defendant's role in precipitating the confrontation during which he or she used force. A defendant was entitled to use self-defense only "if he has not himself *created the necessity for the assault* or *brought the trouble upon himself* by some unlawful act." *State v. Pollard*, 168 N.C. 116, 122 (1914) (emphases added). Thus, with very few exceptions, a defendant whose actions led to the confrontation during which he or she used force was precluded from claiming that his or her use of force was justified as an exercise of the right to self-defense. *See State v. Bell*, 338 N.C. 363, 387 (1994). But, at common law, no group of defendants was categorically prohibited from

invoking the right to self-defense—a defendant was prohibited from invoking self-defense only if it was in some sense the defendant's "fault" that the confrontation occurred.

¶ 26 In this light, McLymore's proposed interpretation of N.C.G.S. § 14-51.4(1) is the one that reflects "a sensible broadening of the common-law defensive force concept of fault." It reflects the reasonable presumption that a defendant who uses force in a confrontation which resulted from his or her "attempting to commit, committing, or escaping after the commission of a felony" contributed to the circumstances giving rise to the need to use force. N.C.G.S. § 14-51.4(1). This interpretation would expand the common law while adhering to its basic principles. By contrast, the State's proposed interpretation of N.C.G.S. § 14-51.4(1) would reflect a profound rupture with the common law. The State's proposed interpretation would transform the meaning of "fault" by eliminating the need to examine the defendant's culpability for creating the circumstance giving rise to the defendant's need to use defensive force.

¶ 27 Under the State's proposed interpretation, "a woman in possession of a little more than one and a half ounces of marijuana, a felony in North Carolina, could not rely on self-defense to justify the use of defensive force if her abusive boyfriend, for reasons unrelated to her marijuana possession, began to beat and threaten to kill her." John Rubin, *The Statutory Felony Disqualification for Self-Defense*, North Carolina Criminal Law: A UNC School of Government Blog (June 7, 2016),

https://nccriminallaw.sog.unc.edu/statutory-felony-disqualification-self-defense. An individual who had previously been convicted of a felony and kept an antique rifle in his or her attic could not rely on self-defense to justify the use of defensive force if he or she was threatened by an armed intruder, even if the individual did not use that rifle or any other firearm in repelling the intrusion. In each of these cases, the individual claiming self-defense would in no way be at "fault" as that concept was understood at common law. Nonetheless, absent a causal nexus requirement, each individual would be required to choose between submitting to an attacker and submitting to a subsequent criminal conviction.

¶ 28    Of course, the General Assembly does possess the authority to alter or abrogate even fundamental common law principles through statutory enactment. Still, statutes which alter common law rules should be interpreted against the backdrop of the common law principles being displaced. *See Seward v. Receivers of Seaboard Air Line Ry.*, 159 N.C. 241, 245–46 (1912) ("Whether the statute affirms the rule of the common law on the same point, or whether it supplements it, supersedes it, or displaces it, the legislative enactment must be construed with reference to the common law, for in this way alone is it possible to reach a just appreciation of its purpose and effect." (quoting Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws (1886))). It is doubtful that the General Assembly intended to completely disavow a fundamental common law principle in a statute

which otherwise closely hews to the common law.

¶ 29        The State's proposed interpretation of N.C.G.S. § 14-51.4(1) also raises substantial constitutional concerns. If self-defense is an "inherent right," *State v. Holland*, 193 N.C. 713, 718 (1927), a statute which precludes defendants from claiming self-defense for reasons entirely unconnected to the circumstances giving rise to their need to use force would potentially tread upon rights guaranteed by the North Carolina Constitution. *See* N.C. Const. art. I, § 1 ("[A]ll persons . . . are endowed by their Creator with certain inalienable rights[ ] . . . among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."); *Cf. Perkins v. State*, 576 So. 2d 1310, 1314 (Fla. 1991) (Kogan, J., concurring) ("The right to fend off an unprovoked and deadly attack is nothing less than the right to life itself."). Although "[t]he state clearly has a compelling state interest in disallowing the use of self defense when a person's own unprovoked, aggressive, and felonious acts set in motion an unbroken chain of events leading to a killing or other injury," an interpretation of N.C.G.S. § 14-51.4(1) which allowed the State to deprive an individual of "the right to defend life and liberty" for other less compelling reasons would be on much shakier constitutional ground. *Perkins*, 576 So. 2d at 1314–15 (Kogan, J., concurring).

¶ 30        The State's proposed categorical bar on the use of self-defense for those engaged in the commission of any felony is inconsistent with longstanding common

law principles, incongruous with legislative intent, raises significant constitutional issues, and would produce absurd results. *Cf. Mayes v. State*, 744 N.E.2d 390, 393 (Ind. 2001) ("A literal application of the contemporaneous crime exception would nullify claims for self-defense in a variety of circumstances and produce absurd results in the process."). Accordingly, we hold that in order to disqualify a defendant from justifying the use of force as self-defense pursuant to N.C.G.S. § 14-51.4(1), the State must prove the existence of an immediate causal nexus between the defendant's disqualifying conduct and the confrontation during which the defendant used force. The State must introduce evidence that "but for the defendant" attempting to commit, committing, or escaping after the commission of a felony, "the confrontation resulting in injury to the victim would not have occurred." *Mayes*, 744 N.E.2d at 394. Here, the trial court did not instruct the jury on this causal nexus requirement. Therefore, the jury instructions it delivered were erroneous.

**C. The trial court's error was not prejudicial because the jury necessarily established an immediate causal nexus between McLymore's use of force and his commission of a felony offense.**

¶ 31    To establish that the trial court's instructional error requires vacating his first-degree murder conviction, McLymore must demonstrate "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2021). Ordinarily, due process requires allowing the jury to determine whether or not a

defendant was engaged in disqualifying conduct bearing an immediate causal nexus to the circumstances giving rise to his or her use of force. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (explaining every criminal defendant's right to a have a jury determine "every fact necessary to constitute the crime with which he is charged"). However, under the circumstances of this case, we are able to conclude that the trial court's instructional error could not have prejudiced McLymore.

¶ 32     The State's primary argument is that McLymore could not have been prejudiced because he had previously been convicted of a felony offense and was in possession of a firearm when he shot Washington. Under North Carolina law, it is a Class G felony for "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction." N.C.G.S. § 14-415.1(a) (2021). McLymore does not dispute that he had previously been convicted of multiple felony offenses and that he was possessing the firearm he used to shoot Washington. Still, these facts do not conclusively establish that McLymore could not have been prejudiced by the trial court's failure to instruct the jury on the causal nexus requirement.

¶ 33     McLymore was not indicted for violating N.C.G.S. § 14-415.1. He was not afforded the opportunity to raise any affirmative defenses to the State's assertion that he was committing a felony offense, such as the defense of necessity. *See State v. Mercer*, 373 N.C. 459, 463 (2020) ("[I]n narrow and extraordinary circumstances,

justification may be available as a defense to a charge under N.C.G.S. § 14-415.1.").

Further, the jury was not afforded the opportunity to decide whether McLymore's

possession of the firearm was causally connected to the initiation of a confrontation

between himself and Washington, which is the operative question under N.C.G.S.

§ 14-51.4(1). To accept the State's argument on this ground would be to effectively

hold that all individuals with a prior felony conviction are forever barred from using

a firearm in self-defense under any circumstances. This would be absurd.

However, the jury did determine beyond a reasonable doubt that McLymore

was engaged in the commission of a different felony offense when he shot Washington:

robbery with a dangerous weapon in violation of N.C.G.S. § 14-87. At trial, the trial

court instructed the jury that

> [i]f you find from the evidence beyond reasonable doubt
> that on or about the alleged date the Defendant had in the
> Defendant's possession a firearm and took and carried
> away property from the person or presence of a person
> without that person's voluntary consent by endangering or
> threatening that person—threatening that person's life
> with the use or threatened [use] of a firearm, the
> Defendant knowing that the Defendant was not entitled to
> take the property and intending to deprive the person of its
> use permanently, it would be your duty to return a verdict
> of guilty. If you do not so find or have a reasonable doubt
> as to one or more of these things, it would be your duty to
> return a verdict of not guilty.

The jury found McLymore guilty of robbery with a dangerous weapon.[3] Because one of the elements of robbery with a dangerous weapon was McLymore's use or threatened use of a firearm, the jury finding McLymore guilty of this offense meant that the jury determined beyond a reasonable doubt that McLymore's felonious conduct was immediately causally connected to the circumstances giving rise to his shooting Washington. Based upon the outcome of McLymore's trial, it is indisputable that there existed an immediate causal nexus between his felonious conduct and the confrontation during which he used assertedly defensive force, and the felony disqualifier applies to bar his claim of self-defense.

Stated another way, while the jury instruction the trial court gave on this issue was erroneous, a permissible jury instruction would state:

> the Defendant is not entitled to the benefit of self-defense
> if he was attempting to commit, committing, or escaping
> after the commission of, the felony of robbery with a
> dangerous weapon. . . . [T]he State must prove beyond a
> reasonable doubt, among other things, that the Defendant

---

[3] "The essential elements of robbery with a dangerous weapon are: '(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened.'" *State v. Haselden*, 357 N.C. 1, 17 (2003) (quoting *State v. Call*, 349 N.C. 382, 417 (1998)); *see also* N.C.G.S. § 14-87 (2021). Further, "[t]o be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction." *State v. Olson*, 330 N.C. 557, 566 (1992). Thus, because self-defense is not a defense to this charge, and because the jury's determination of guilt necessarily means the jury found McLymore's use of a firearm temporally and causally connected to the felony offense, McLymore cannot argue that there is a reasonable possibility that a properly instructed jury would have returned a different verdict on the charge of robbery with a dangerous weapon.

did not act in self-defense, or that the Defendant was attempting to commit, committing, or escaping after the commission of the felony of robbery with a dangerous weapon if the Defendant did act in self-defense but that there was an immediate causal connection between Defendant's use of force and his felonious conduct.

Because the State did prove to the jury's satisfaction that McLymore committed the felony offense of robbery with a deadly weapon, and based on the uncontroverted facts, McLymore cannot establish that he was prejudiced in any way by the trial court's issuance of the legally erroneous jury instruction.

## IV. Conclusion.

The trial court misstated the law of self-defense by failing to instruct the jury that the felony disqualifier contained in N.C.G.S. § 14-51.4(1) requires the State to prove an immediate causal nexus between the defendant's disqualifying felonious conduct and the circumstances giving rise to the defendant's use of defensive force. Nonetheless, McLymore cannot prove prejudice in this case because the jury determined beyond a reasonable doubt that his commission of robbery with a dangerous weapon was immediately causally connected to his shooting Washington. Accordingly, we modify and affirm the decision of the Court of Appeals.

MODIFIED AND AFFIRMED.

Justice BERGER did not participate in the consideration or decision of this case.

Chief Justice NEWBY concurring in the result.

I agree with the majority's determination that sections 14-51.3 and 14-51.4 supplant the common law with respect to perfect self-defense. However, because defendant failed to preserve his causal nexus argument for appellate review, this Court should not address it. Further, even if defendant did preserve his causal nexus argument, section 14-51.4 does not require the State to prove a causal nexus between a defendant's commission of a felony and his use of self-defense. Therefore, I do not join the portion of the majority's opinion that places a causal nexus element into section 14-51.4.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1).

> The specificity requirement in Rule 10(a)(1) prevents unnecessary retrials by calling possible error to the attention of the trial court so that the presiding judge may take corrective action if it is required. Moreover, a specific objection discourages gamesmanship and prevents parties from allowing evidence to be introduced or other things to happen during a trial as a matter of trial strategy and then assigning error to them if the strategy does not work. Practically speaking, Rule 10(a)(1) contextualizes the objection for review on appeal, thereby enabling the appellate court to identify and thoroughly consider the specific legal question raised by the objecting party.

*State v. Bursell*, 372 N.C. 196, 199, 827 S.E.2d 302, 305 (2019) (citations, internal quotation marks, and alterations omitted). Further, "[t]his Court has long held that where a *theory* argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.'" *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (emphasis added) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).

During the charge conference in the present case, defendant made the following objection to the trial court's proposed jury instructions:

> [Defendant] has a common-law right of self-defense. It's not abdicated by the statute. The statute speaks of a justification under the statute of self-defense under common law is not abdicated by that statute. We'd also object under that [defendant] has a constitutional right to defend his own life and under the due process clause of the Fifth Amendment and the 14th Amendment, we believe that the limitation of his right to defend his own life with that application—with the Court's application—or interpretation and application of the statute would infringe upon that due process right. And finally, that to do so is a constitutional violation of that right.

Defendant's objection provided two specific theories for why the trial court should instruct the jury on common-law self-defense: (1) section 14-51.4 does not disqualify the use of common-law self-defense; and (2) if section 14-51.4 does supplant the common law, then the trial court's application of section 14-51.4 to limit defendant's right to defend his own life would violate the Due Process Clause of both the Fifth and Fourteenth Amendments.

On appeal, however, defendant now asserts a new theory: the trial court's instruction was erroneous because it did not state that section 14-51.4 requires the State to prove a causal nexus between defendant's commission of a felony and his use of defensive force. The majority's conclusion that this new theory was either encompassed within defendant's broad due process argument or apparent from the context is unfortunate. Based upon the majority's reasoning, a defendant could generally assert before the trial court that an instruction violates his due process rights and later present on appeal any number of theories to support the overbroad challenge. This is precisely what Rule 10's specificity requirement seeks to avoid. *See* N.C. R. App. P. 10(a)(1); *Sharpe*, 344 N.C. at 194, 473 S.E.2d at 5. Therefore, since defendant's causal nexus argument is not preserved for appellate review, the Court should not address it.

Even if defendant's causal nexus argument were preserved, it is without merit. The primary endeavor of courts in construing a statute is to give effect to legislative intent. *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002); *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). If the statutory language is clear and unambiguous, a court should give the words their plain and definite meaning. *Fowler v. Valencourt*, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993). When, however, "a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess v. Your House of Raleigh, Inc.*, 326

N.C. 205, 209, 388 S.E.2d 134, 136–37 (1990). Furthermore, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (quoting *State v. Barksdale*, 181 N.C. 621, 625, 107 S.E. 505, 507 (1921)).

¶ 43    The relevant portion of section 14-51.4 states that "[t]he justification described in . . . [N.C.]G.S. [§] 14-51.3 is not available to a person who used defensive force and who . . . [w]as attempting to commit, committing, or escaping after the commission of a felony." N.C.G.S. § 14-51.4 (2021). This language is unambiguous and clearly does not include a causal nexus requirement. Nonetheless, the majority claims that it would be absurd to interpret section 14-51.4 literally because it would effectively bar all convicted felons from ever using a firearm in self-defense. The majority, however, ignores the fact that section 14-51.4 in no way prevents felons from legally defending themselves with other weapons. This result is not absurd.[1] Rather, it reflects a policy decision to limit the use of self-defense to the law-abiding. Such an intent is certainly sensible given the State's substantial interests in protecting its citizens and deterring

---

[1] While this result, on the facts before us, is not so absurd as to require an interpretation of the statute different than its plain language, we note that defendant did not preserve any constitutional arguments. Accordingly, we express no opinion on whether this interpretation violates any federal or state constitutional rights.

recidivism. *See State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, ¶ 27; *Mazda Motors of Am., Inc.*, 296 N.C. at 361, 250 S.E.2d at 253 ("If the language of a statute is free from ambiguity and expresses a single, definite, and sensible meaning, judicial interpretation is unnecessary and the plain meaning of the statute controls.").

¶ 44        Here defendant's behavior was far from law-abiding. At trial, defendant admitted that he was a convicted felon due to his previous convictions of common-law robbery, larceny of a firearm, and assault inflicting serious bodily injury. He also admitted that on 24 March 2014, he entered Andre Womack's house, engaged in an altercation with Womack over money, took Womack's gun, and shot Womack. The next month, defendant used the same gun to rob[2] and kill David Washington. Defendant's unlawful possession of the gun enabled him to commit murder.

¶ 45        At the time that defendant killed Washington, he was committing the felonies of possession of a firearm by a felon, *see* N.C.G.S. § 14-415.1(a) (2021), and robbery with a dangerous weapon, *see* N.C.G.S. § 14-87(a) (2021). Section 14-51.4 thus disqualifies defendant's use of perfect self-defense. Therefore, I concur in the result only.

        Justice BARRINGER joins in this concurring opinion.

---

[2] The jury found defendant guilty of robbery with a dangerous weapon.